**NORTH AMERICAN INDUSTRIES, INC., et al., Plaintiffs, Appellants,**

v.

**Sam I. FELDMAN, District Director, Immigration and Naturalization Service, Defendant, Appellee.**

**No. 83–1135.**

United States Court of Appeals, First Circuit.

Argued Aug. 3, 1983.

Decided Dec. 5, 1983.

Marshall D. Stein, Boston, Mass., on brief for plaintiffs, appellants.

Joan I. Milstein, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

PEREZ–GIMENEZ, District Judge.

We review here a decision of the United States District Court for the District of Massachusetts, affirming the Immigration and Naturalization Service's (hereinafter "INS" or the "Agency") denial of appellant North American Industries, Inc.'s (hereinafter "North American") petition on behalf of Hernan Guerrero for a sixth-preference classification under Section 203(a)(6) of the Immigration and Nationality Act (hereinafter "the Act"), 8 U.S.C. § 1153(a)(6). The question on appeal is whether INS abused its discretion in denying North American's petition to classify Guerrero as a sixth-preference immigrant under Section 1153(a)(6).

* Of the District of Puerto Rico, sitting by desig-     nation.

Because we believe that the INS' interpretation of Section 1153(a)(6) runs counter to the purpose that Congress sought to serve by its enactment, and since the INS denied North American's petition based on that interpretation, we hold that the INS abused its discretion. Therefore, we reverse the decision of the District Court granting summary judgment in favor of the District Director of INS, appellee herein, and remand with instructions that the case be remanded to the District Director for the granting of North American's sixth-preference petition.

## I.

Appellant North American Industries, Inc., is engaged in the manufacture of cranes and has its principal place of business in Everett, Massachusetts. Appellant Guerrero is a 42-year-old native and citizen of Chile who has been employed by North American since April 1972.

In the manufacture of cranes, North American utilizes computerized lathes and high-speed gear cutters. Guerrero has been programing and operating these machines for North American for several years. Besides Guerrero, North American has been unable to find other persons willing and capable of operating or of learning how to operate the computerized lathes and the gear cutters despite repeated attempts to find and train an American citizen or a permanent resident to fill Guerrero's position.

In view of its failure to find a replacement for Guerrero and the pressing need for someone to operate the lathes and gear cutters in order to keep its business going, North American petitioned the Immigration and Naturalization Service to classify Guerrero as a temporary worker[1] and to grant him an H–2 nonimmigrant visa, pursuant to Section 101(a)(15)(H)(ii) of the Act, 8 U.S.C. § 1101(a)(15)(H)(ii).[2]

North American's petition was supported by the required temporary labor certification issued by the United States Department of Labor. North American wanted Guerrero to train new employees in the operation and programming of the lathes and gear cutters and hoped "that during [Guerrero's] tenure in the United States as an H–2, it would be able to find and train" an American employee or a permanent resident to replace Guerrero upon his departure from the United States. Affidavit of James Dossett, Appendix, at 9 & 30. The Immigration and Naturalization Service granted North American's petition and is-

---

1. It appears that Guerrero had been in the United States illegally since 1972 and until February 1977, when INS granted him an H–2 visa. The government in its brief argues that:

    ... the INS policy outlined in Operations Instruction 204.4(b)(2) is consistent with INS' duty to make its own investigation of facts alleged in a petition *and to consider a petitioner's good faith. Indeed, a finding of lack of good faith would not have been capricious in this instance.*

    Brief for Appellee, p. 17 (emphasis added). However, the government admitted that INS did not address the issue of appellant's good faith. Brief for Appellee, p. 17, footnote 11. Instead, the District Director and the Regional Commissioner of INS concluded that Guerrero would be engaged in the same job for which he had been accorded H–2 status and denied North American's petition for a sixth-preference classification for Guerrero based on that conclusion. Appendix, pp. 3 and 5.

    The government cannot inject the issue of appellant's bad faith—if indeed they acted in bad faith—at this stage of the proceedings in this case. If appellant's good faith was not questioned by INS when it was reviewing their petition, and it was not an issue raised before the District Court, it cannot be questioned now. *Greenwich Fed. S. & L. Assoc. v. Fidelity Bond & Mortgage Co.,* 714 F.2d 183, 184 (1st Cir. 1983) ("a legal theory not presented to the trial court cannot be raised for the first time on appeal"). *See also: Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979); *Dobb v. Baker,* 505 F.2d 1041, 1044 (1st Cir.1974); *Roto-Lith, Ltd. v. F.P. Barlett & Co.,* 297 F.2d 497, 500 (1st Cir.1962).

2. 8 U.S.C. § 1101(a)(15)(H)(ii) provides, in pertinent part, as follows:

    The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

    (H) an alien having a residence in a foreign country which he has no intention of abandoning ... (ii) who is coming *temporarily* to the United States to perform *temporary* services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country.... (emphasis added).

sued an H–2 temporary visa for Guerrero on February 8, 1977.[3] Guerrero's visa was to expire on November 14, 1977, at which time Guerrero was to leave the United States.

After obtaining the readmission to the United States of Hernan Guerrero as a temporary employee, North American continued to seek for a replacement for Guerrero by advertising in the local newspapers and contacting employment agencies. Again, North American's efforts were unsuccessful. Between October 1976 and November 1978, North American attempted to train several persons, but was unable to find anybody willing to complete the required training and capable of learning *both* how to operate *and* program the lathes and gear cutters. Only one man finished the training satisfactorily, but he left the company upon completion of his training to start his own business. North American maintains that unless it is able to find a replacement for Guerrero or to keep him as a permanent employee, it will be forced to shut down its operations.

Faced with the possibility of having to close its business if it lost Guerrero, and the fact that Guerrero's temporary visa was about to expire, North American sought to obtain permanent employment status for Guerrero. On November 10, 1977, four days short of the expiration of Guerrero's H–2 visa, North American applied for a permanent labor certification from the United States Department of Labor to the effect that the employment of Guerrero will not displace a United States worker nor adversely affect the wages or working conditions of other workers in the United States similarly employed.[4] The Department of Labor issued a permanent labor certification on October 17, 1978.

Once North American obtained the required labor certification, it proceeded to file a "Petition to Classify Preference Status of [Guerrero] on Basis of Profession or Occupation (INS Form I–140)" on November 2, 1978.[5] The approved permanent labor certification was submitted together with the petition. North American sought to have Guerrero classified as a sixth-preference immigrant pursuant to Section 203(a)(6) of the Act, 8 U.S.C. § 1153(a)(6),[6] since its need for Guerrero had become permanent.

The District Director of INS (hereinafter "Director") denied North American's sixth-preference petition on December 27, 1978, because North American had failed to establish to his satisfaction that the position offered Guerrero was of a permanent nature. Based on a review of the permanent labor certification supporting the sixth-preference petition and the temporary labor certification submitted with the prior petition for a temporary H–2 visa, the Director concluded that the duties to be performed by Guerrero were identical and that therefore the position now being offered was the same as the one which previously had been certified as temporary. Thus, the Director denied the sixth-preference petition since a position which previously had been certified as temporary could not now be certified as permanent.[7]

**3.** In order to be eligible for an H–2 temporary nonimmigrant visa Guerrero had to return to his home country of Chile. Guerrero's H–2 visa was issued on February 8, 1977, and subsequently, he was readmitted to the United States on February 17, 1977.

**4.** Possession of a labor certification from the Department of Labor is a prerequisite to obtaining permanent residence as a sixth-preference immigrant. Section 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14).

**5.** The filing of such a petition by the employer is customarily a preliminary step in applying for permanent residence. Once the petition is approved, the alien may file an application for permanent residence (or for an immigrant visa) —either within the United States through adjustment of status, pursuant to Section 245 of the Act, 8 U.S.C. § 1255, or by applying to a United States Consul abroad for an immigrant visa.

**6.** 8 U.S.C. § 1153(a)(6) provides for the granting of preference status to
 . . . qualified immigrants who are capable of performing specified skilled or unskilled labor, *not of a temporary or seasonal nature,* for which a shortage of employable and willing persons exists in the United States. (emphasis added)

**7.** The District Director stated:
 A review of the permanent labor certification issued by the Department of Labor on October 17, 1978 indicates that the proposed

The decision of the District Director was certified for review to the Regional Commissioner of INS (hereinafter "Commissioner"). On review before the Commissioner, North American argued that although Guerrero's position had previously been certified as temporary, its inability to find a suitable replacement for Guerrero, coupled with the likelihood of having to shut down its business if Guerrero were forced to leave the United States, had changed the position from one of a temporary nature to one of a permanent nature. The Commissioner compared the two positions as these were described in the respective job offers (DOL Form MA 7–50B), and concluded, like the District Director, that Guerrero would be engaged in the same job for which he had been accorded H–2 status. Thus, on October 12, 1979, the Commissioner affirmed the decision of the District Director.

Subsequently, North American and Guerrero filed their complaint in the United States District Court for the District of Massachusetts seeking reversal of INS' denial of the sixth-preference petition. North American and Guerrero challenged INS' interpretation of Section 203(a)(6) of the Act, 8 U.S.C. § 1153(a)(6),[8] as that interpretation is embodied in INS' Operations Instruction 204.4(b)(2).[9] Said Operations Instruction requires that a sixth-preference petition be denied if the position being offered is the same as that for which the benefi-

ciary had been granted an H–2 visa. The reason for denying the petition is that the position previously had been certified as temporary and, as such, does not qualify the beneficiary for a sixth-preference classification since 8 U.S.C. § 1153(a)(6) requires that the position offered be of a permanent nature. Again, North American and Guerrero argued that although the nature of the two positions may be the same with respect to the duties required of Guerrero, the positions were in fact different from the point of view of the employer's needs because that which Guerrero filled as an H–2 nonimmigrant was a temporary position, but had become permanent due to North American's inability to find a replacement for Guerrero.

However, the District Court rejected appellants' arguments because of the "great weight" which should be given to the interpretation of a statute by the agency charged with administering it and the "controlling weight" which should be given to an agency's interpretation of its own regulations. The Court held that the Operations Instruction was consistent with and advanced the purposes of the statute and that "its application by [INS] in this case was reasonable and in no sense arbitrary or capricious." *North American Industries, Inc. v. Feldman*, No. 79–2147 (D.Mass. January 17, 1983) (Memorandum and Order Grant-

---

duties of the beneficiary are identical to those stipulated on the temporary labor certification.

In view of the fact that the petitioner had previously submitted satisfactory representations that the beneficiary's position was of a temporary nature and obtained temporary certification for such, *and that the documents submitted in support of the instant petition do not establish any difference in the position now certified as permanent,* the petition is hereby denied since the petitioner has failed to establish that the position offered is of a permanent nature.

Appendix, at p. 5 (emphasis added). There is no indication whether in making his decision the Director considered North American's *need* for Guerrero's services.

**8.** *See supra* note 6.

**9.** The Operations Instruction provides, in pertinent part, that:

... a sixth-preference petition filed on behalf of an alien in the United States as an H–2 nonimmigrant by the same employer who had filed the H–2 petition shall be denied *if the new petition indicates the beneficiary will be engaged in the same job for which he had been accorded H–2 status.* The ground for denial shall be that the employer previously had submitted satisfactory representations that the job was of a temporary nature and, as such, does not qualify the beneficiary for classification under section 203(a)(6).

When the petitioner establishes that the beneficiary will be employed in a job which differs from the one for which an H–2 petition by the same employer had previously been approved, the new petition may be approved for sixth-preference classification if otherwise approvable. (emphasis added)

In the current version of the Operations Instructions, O.I. 204.4(b)(2) was renumbered O.I. 204.4(b)(7).

ing Defendant's Motion for Summary Judgment). The District Court approved of INS' use of the test embodied in O.I. 204.-4(b)(2)—the "same-position" test—in denying appellant's petition, stating:

We disagree with [North American's and Guerrero's] argument that [INS'] rejection of the sixth preference visa application was automatic. [INS] . . . relied upon a careful comparison of the two jobs. To require the INS to accept [North American's] characterization of the position as permanent or temporary would . . . defeat the purpose of the statutory scheme. It would establish a subjective standard within the control of the applicant employer and replace the objective standard provided by the statute and Operating Instruction.

Thus, on January 17, 1983, the District Court entered judgment granting INS' Motion for Summary Judgment and dismissing the case. North American and Guerrero then appealed to this Court.

## II.

On appeal, North American and Guerrero again challenge the validity of Operations Instruction 204.4(b)(2) on the same ground advanced before the District Court—that the O.I. is out of harmony with the Congressional intent behind 8 U.S.C. § 1153(a)(6) in that Congress intended that a position be temporary or permanent in light of the employer's needs. INS counters by arguing that the denial of a preference petition has to be affirmed unless it constitutes an abuse of discretion. The Agency then maintains that because it did not abuse its discretion in denying the sixth-preference petition—since its decision was not based on an improper understanding of the law and there was evidence in the administrative record supporting the denial—the District Court properly affirmed its decision by granting INS' motion for summary judgment. The crux of INS' argument is that there is evidence in the administrative record supporting the INS' finding that the position described in North American's sixth-preference petition was identical to the one which North American had previously characterized as temporary

in nature and for which INS had granted Guerrero a temporary-worker (H–2) visa. Since the two positions were found to be identical with respect to the duties required of the beneficiary, and since North American had previously characterized the position as temporary, INS' determination that North American failed to establish that the position offered Guerrero was not of a permanent nature, as is required by 8 U.S.C. § 1153(a)(6), was said not to constitute an abuse of discretion.

We agree with the appellee that the decision to grant or deny a petition to obtain a preferential immigration classification is one that is within the discretion of INS, and thus, a federal court may reverse an INS denial of a preference classification only if the INS abused its discretion. INS abuses its discretion if it bases its decision upon an improper understanding of the law or if there is no evidence to support the decision. *See, Mila v. District Director of Denver,* 678 F.2d 123, 125 (10th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 726, 74 L.Ed.2d 952 (1983); *Kaliski v. District Director of INS,* 620 F.2d 214, 216 n. 1 (9th Cir.1980).

However, it is also true that federal courts may engage in a plenary review of questions of law, including questions of statutory construction and interpretation. *Tovar v. INS,* 612 F.2d 794, 797 (3rd Cir. 1980); *De Los Santos v. INS,* 525 F.Supp. 655, 660 (S.D.N.Y.1981) (citing *Tovar*), *aff'd,* 690 F.2d 56 (2nd Cir.1982). While it is true that an appellate court must give great deference to the construction accorded a statute by the agency charged with its administration, deference to an agency's interpretation of the law does not equate with blind faith. *Committee for an Independent P–I v. Hearst Corp.,* 704 F.2d 467, 473 (9th Cir.1983). A court is obliged to accept the administrative construction of a statute only so far as it is reasonable, *Columbia Basin Land Protection Ass'n. v. Schlesinger,* 643 F.2d 585, 600 (9th Cir.1981), and consistent with the intent of Congress in adopting the statute. *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39

L.Ed.2d 270 (1974); *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 339–340, 38 L.Ed.2d 287 (1973). Thus, if the Agency's interpretation of the statute is found to be inconsistent with the statutory language, legislative history, or purpose of the statute, it must be invalidated. Moreover, an administrative decision based on erroneous legal standards cannot stand. *SEC v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); *Kovac v. INS,* 407 F.2d 102, 104 (9th Cir.1969). *See also, Wheatley v. Adler,* 407 F.2d 307 (D.C. Cir.1968) (Administrative order must be set aside if agency's underlying standards are not in accord with law).

We would be forced to agree with INS and to affirm the District Court's decision if we believed that the Agency's interpretation of 8 U.S.C. § 1153(a)(6) were consistent with the intent of Congress in enacting the statute. It seems clear from the administrative record that in determining whether to classify Guerrero under 8 U.S.C. § 1153(a)(6), INS guided its inquiry by the standard embodied in O.I. 204.4(b)(2): whether the petition indicates the beneficiary (Guerrero) will be engaged in the same job for which he had been accorded H–2 status. Under the standard used by INS it is the nature of the duties to be performed, rather than the nature of the employer's need, that determines whether a position is temporary or permanent. Because we believe that the test used by INS runs counter to the Congressional intent behind 8 U.S.C. § 1153(a)(6), we reverse the District Court's decision affirming INS' denial of the sixth-preference status for Guerrero. Moreover, because the evidence of North American's need for Guerrero's services on a permanent basis was undisputed, we hold that Guerrero is entitled to sixth-preference status and that North American's petition should be approved.

The legislative history reveals that Congress, in imposing the requirement that the labor to be performed by an alien be of a permanent nature in order to qualify for a sixth-preference visa under Section 1153(a)(6), intended that an employer's need should determine whether a position is permanent or temporary. The original draft of Section 1153(a)(6) did not contain the requirement that the labor to be performed be of a permanent nature, i.e., that it be labor "not of a temporary or seasonal nature." [10] This requirement was suggested as an amendment to the proposed bill by organized labor. [11] In the hearings before the House Subcommittee on H.R. 2580 to amend the Immigration and Nationality Act, Congressman Moore, the ranking minority member of the Subcommittee, was interested in determining the scope of the amendment proposed by organized labor. Specifically, Congressman Moore wanted to know what was intended by the phrase "labor, not of a temporary or seasonal nature". The following colloquy was held between Congressman Moore and the spokesmen for the AFL–CIO, Mr. Meiklejohn and Mr. Biemiller:

> MR. MEIKLEJOHN. We say the jobs must be permanent in nature.

**10.** When the proposed bills (H.R. 2580 and S. 500) were referred to the House and Senate Subcommittees on Immigration and Nationality for their consideration and recommendations, what was to become the sixth preference did not contain language about the non-temporary nature of the labor. In both bills the requirements for the fourth preference (sixth preference in the statute as enacted) were (1) that the immigrants could perform specified functions (2) for which a shortage of employable and willing persons exists in the United States. *See,* Hearings on H.R. 2580 Before the Subcommittee on Immigration and Nationality of the House Committee on the Judiciary, 89th Cong., 1st Sess. 5 (1965); Hearings on S. 500 Before the Subcommittee on Immigration and Nationality of the Senate Committee on the Judiciary, 89th Cong., 1st Sess. 88 (1965).

**11.** The formal statement submitted by the AFL–CIO contained the recommended language, which is very similar to that in the statute as enacted:

> Therefore, we urge an amendment to the provisions which would require the jobs to be filled to be permanent in nature, and not merely seasonal or otherwise temporary.

House Subcommittee Hearings, *supra* note 10, at 340; Senate Subcommittee Hearings, *supra* note 10, at 642.

MR. MOORE. Yes.

MR. BIEMILLER. I think possibly we can clarify this Congressman, by pointing out that what we are talking about, and I am just using an arbitrary skill at the moment, is this: *If we are to admit 100 tailors we want to be sure that there is a shortage of 100 tailors on a permanent basis and not that this is a shortage for 6 months of 100 tailors.*

MR. MOORE. *I would certainly agree with that.*[12]

It seems clear that what the proponents of the amendment had in mind was that the need for specified skilled or unskilled labor in short supply in the United States would determine whether an alien would qualify for a sixth-preference classification. The Subcommittee indicated agreement with organized labor's intention and incorporated the proposed amendment into the final draft of the bill. The emphasis, thus, was placed on the prospective employer's need for laborers. If this need was determined to be on a permanent basis—because of a permanent shortage of employable persons—then the position would qualify for a sixth-preference classification under 8 U.S.C. § 1153(a)(6). Throughout the Sub-

committee hearings on the proposed bill and the floor debates numerous references were made to the fact that those who would be admitted under the sixth preference would be persons capable of performing labor, not of a temporary or seasonal nature, for which there is a demonstrated *shortage* —and, thus, a need—of employable and willing workers in the United States.[13]

In fact, the INS has conceded that the needs of an employer should determine whether a position offered an alien is temporary or permanent. In its brief, appellee District Director stated that:

INS does not dispute that an employer's needs determine the classification of employment as "temporary" or "permanent". Indeed, in *Matter of Artee Corporation,* Interim Decision # 2934 (November 24, 1982), INS held that *"[i]t is the nature of the need for the duties to be performed which determines the temporariness of the position."*

Brief for Appellee, at p. 15 (emphasis added). The case of *Matter of Artee Corporation,* cited in appellee's brief, represents the INS' current interpretation of the statutory requirement that in order to qualify for a visa under 8 U.S.C. § 1153(a)(6) the labor to

---

12. House Subcommittee Hearings, *supra* note 10, at 327 (emphasis added).

13. During the Senate debates on the proposed bill, Senator Saltonstall made the following remarks:

The bill's preference system also gives priority to persons capable of performing jobs, either in our national interest or for which there is a labor shortage in the domestic labor market. Many of our hospitals, educational institutions, industrial firms, and even our own Government agencies *need* qualified people to assume important positions from which they could contribute significantly to the national prosperity and growth, and more importantly, to advances of international significance in their fields. *The present quota system, however, prevents* many *qualified and needed people from gaining prompt entry.*

These people should not be required to experience long waiting periods on the quota lists when there are employment opportunities available to them in the United States. *It should be emphasized that this particular*

group of workers is not in competition with American workers. They would be filling jobs which presently go unfilled because there are not sufficient workers in the United States to fill them. Requiring these individuals to wait serves no real purpose. By admitting them, and filling these vacant positions, the domestic economy will be enhanced, and in addition, employment opportunities will be created for domestic workers.

111 Cong.Rec. 24,442 (1965) (emphasis added). *See also,* 111 Cong.Rec. 24,239, 24,441, 24,261 (Senate debates on H.R. 2580).

In the House debates, similar statements were made. Congressman Donohue's remark is representative of what many other congressmen stated:

Limited preferences are further provided for professional qualified people, and *some semiskilled people, whose services are urgently needed here and who will contribute the most to the national economy, welfare and cultural interests of the United States.*

111 Cong.Rec. 21,791 (1965) (emphasis added). *See also* 111 Cong.Rec. 21,593, 21,767, 21,769, 21,770, 21,791 (House debates on H.R. 2580).

be performed by an alien be "not of a *temporary* or seasonal nature." Before the decision in *Matter of Artee,* the INS' interpretation of the statutory requirement was that the nature of the *duties* to be performed were controlling, not the intent of the petitioner and the beneficiary concerning the time that the individual beneficiary would be employed in that position. *Matter of Contopoulos,* 10 I & N Dec. 654 (1964). This interpretation seems also to be the basis for the "same-position" test embodied in Operations Instruction 204.4(b)(2). However, in *Matter of Artee,* the INS expressly overruled its decision in *Matter of Contopoulus* stating that it viewed its prior interpretation of the Act as incorrect:

> The Service now views this interpretation as incorrect. It is not the nature or the duties of the position which must be examined to determine the temporary need. It is the nature of the need for the duties to be performed which determines the temporariness of the position.

█ Throughout the proceedings in this case, and until the filing of appellee's brief, the INS' position has been that the nature of the duties, rather than the needs of the employer, determines the temporariness of a position.[14] On the contrary, North American's and Guerrero's position has consistently been to the effect that the employer's needs should determine whether a position is temporary or permanent. With its decision in *Matter of Artee* the INS has brought its interpretation of 8 U.S.C. § 1153(a)(6) into conformity with the position advocated by North American and Guerrero throughout the proceedings in this case. More important, the Agency has brought its interpretation of Section 1153(a)(6) into conformity with Congress' intent in enacting the statute. It is clear that under the standard promulgated by the INS in *Matter of Artee,* the position offered Guerrero is of a permanent nature

—i.e., "not of a temporary or seasonal nature". North American submitted two affidavits by its manufacturing manager stating that the company has been unable to find persons capable of operating and programming, or of learning how to operate and program, the computerized lathes and gear cutters, and that North American would have to shut down its operations if Guerrero were not granted an immigrant visa and were forced to leave the United States. This evidence appears to be uncontroverted and is supported by Guerrero's receipt of a Department of Labor permanent labor certification. Since the standard employed by the INS in denying North American's petition is not consistent with Congress' intent and does not serve the purposes of the Act, the Agency's action cannot stand. While normally we would remand to the agency for further consideration of Guerrero's status in light of the standard set out herein, the absence of a factual controversy under the proposed standard for granting sixth preference status leads us to direct the granting of North American's petition to classify Guerrero as a sixth preference immigrant.

*For the foregoing reasons, the judgment of the District Court is reversed, and the case is remanded to the District Court with instructions that it remand to the District Director of INS for him to grant North American's sixth-preference petition.*

---

14. In effect, this was the INS' position even before the District Court, regardless of the fact that the Agency had changed its interpretation of the statute as of November 24, 1982—in *Matter of Artee*—almost two months before the District Court's ruling.