**LONDON TYPOGRAPHERS, INC., and Dinshaw Sachinvala, Plaintiffs,**

v.

**Charles C. SAVA, District Director and Stanley McKinley, Regional Commissioner, U.S. Immigration Service, Defendants.**

No. 85 Civ. 4164 (RWS).

United States District Court,
S.D. New York.

Jan. 31, 1986.

Omar Z. Ghobashy, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., Jorge d Guttlein, Asst. U.S. Atty., of counsel, New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs London Typographers, Inc. ("petitioner" or "London Typographers") and Dinshaw Sachinvala ("beneficiary" or "Sachinvala") bring this action to challenge the final decision of defendants Charles C. Sava ("District Director"), New York District Director of the Immigration and Naturalization Service ("INS") and Stanley E. McKinley, Eastern Regional Commissioner of the INS ("Regional Commissioner"), seeking a reversal of the denial of Sachinvala's visa petition. Petitioner and beneficiary have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., claiming that the denial of the immigration petition was arbitrary and capricious, although the moving papers fail to include a Local Rule 3(g) statement setting forth undisputed material facts and fail to include a memorandum of law setting forth points and authorities in support of its motion as is required by Local Rule 3(b). The INS has cross-moved for judgment on the pleadings pursuant to Rule 12(c) Fed.R.Civ.P., seeking a declaration that the denial of the immigrant visa was in accordance with the statutory directives of the Immigration and Nationality Act (the "Act") and was not an abuse of discretion. For the reasons set forth below, petitioner and beneficiary's

motion for summary judgment is denied, and the cross motion to dismiss is granted.

**Prior Proceedings**

London Typographers filed this action on June 3, 1985 and served a summons and complaint on the District Director of the U.S. Immigration and Naturalization Service on June 5, 1985. On September 19, 1985 London Typographers filed a notice of motion for a default and summary judgment pursuant to Rules 55 and 56, Fed.R. Civ.P., which was granted by memo endorsement of this court on October 7, 1985, no opposition having been filed. On the same day, however, Michael D. Patrick, Special Assistant United States Attorney, wrote to the court to explain the reasons for defendants delayed response, which letter was received on October 14, 1985 and treated as a motion to reargue pursuant to Rules 55(c) and 60(b), Fed.R.Civ.P., and granted on October 14, 1985. On November 21, 1985 the INS filed its notice of motion for an order granting judgment on the pleadings, argued before this court on November 22, 1984.

**Statutory Scheme**

Aliens seeking to immigrate to the United States must obtain an immigrant visa pursuant to the preference system set up by Congress in Section 203 of the Immigration and Nationality Naturalization Act (the "Act"), 8 U.S.C. § 1153. The sixth preference category, the section under which the beneficiary sought his exemption, provides:

> (6) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 201(a), to qualified immigrants who are capable of performing specified skilled or unskilled labor, not of temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States.

A prerequisite to a sixth preference visa classification is a certificate from the Department of Labor ("DOL") pursuant to 8 U.S.C. § 1182(a)(14), section 212(a)(14) of the Act, that there are insufficient United States workers to fill the position which the petitioner offers the beneficiary, and that the employment offered will not adversely affect the wages or working conditions of workers in the United States. The Attorney General is charged with the responsibility of approving the visa application under the preference category. Section 204 of the Act provides in relevant part:

> (a) ... any person desiring and intending to employ within the United States an alien entitled to classification as a preference immigrant under section 203(a)(6) may file a petition with the Attorney General for such classification
>
> ....
>
> (b) After an investigation of the facts in each case, and after a consultation with the Secretary of Labor with respect to petitions to accord a status under section 203(a)(3), or (b), the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made ... is eligible for a preference status under section 203(a), approve the petition ...

8 C.F.R. § 2.1 delegates all of these investigatory powers of the Attorney General to the INS if they relate to the immigration and naturalization of aliens.

**Facts**

The facts of this action, contained in the administrative record of the proceedings below, constitute the only evidence upon which this court may adjudicate. *Navarro v. District Director,* 574 F.2d 379, 383 (7th Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978); *Black Construction Corp. v. INS,* 746 F.2d 503, 505 (9th Cir.1984).

On December 21, 1979, the petitioner London Typographers filed an application for alien employment with the DOL, asserting that it needed an employee with four years of experience as a "compositor-typesetter-proofreader" of the Persian, Urdu, Gujrati and Hindi languages. The petitioner identified Dinshaw Sachinvala, a Pakistani citizen, as the beneficiary of the application, and stated that it would employ Sachinvala on a full-time basis at a salary

of $11,700.00. Pursuant to ' section 212(a)(14) of the Act, the DOL certified that there were insufficient workers to fill the typesetting position and that Sachinvala's employment would not adversely affect the working conditions or wages of workers in the United States.

On November 18, 1980, petitioner and beneficiary submitted an I–140 petition to classify Sachinvala as eligible for sixth preference status under the Act. Along with this application, Sachinvala submitted several documents relevant to his qualifications for the job, including a memorandum dated May 4, 1970 from a person who identified himself as the managing partner of a business under the name of Jupiter Services. The memo in pertinent part provided:

This is to certify that Mr. Dinshaw R. Sachinvala s/o Rustchjee H. Sachinvala was appointed on 1st October 1965 at our press for Typesetting and Proofreading. *He worked in this position for 8 months and later even undertook to perform electric control repairs of press equipments.* During the 4½ years that he worked for us we found him enterprising, enthusiastic and very cooperative. He knows Gujrati, Urdu and Persian in addition to of course a good knowledge of English.

(emphasis supplied). The other documents submitted attested to Sachinvala's qualifications as an electronics expert, both for the National Iranian Gas Company and as a founder listed in an advertisement for a "Sachin Institute" also located in Pakistan. London Typographers also submitted documentation in support of the I–140 petition, which included, *inter alia,* a March 2, 1981 letter from Abraham Mathai ("Mathai") which stated that the beneficiary was employed by London Typographers at $225.00 per week, and a December 21, 1979 letter from the former president Chris A.H. Quirashi in support of the petition.

On March 10, 1981 Mr. Quirashi submitted a second letter to the INS retracting his support for the petition. It stated in relevant part:

I have been informed from Karachi, through my friend that Mr. Sachinvala is a Doctor Phd and never work in printing trade, he runs a Radio School, now his sons are running, and that service certificate requires investigation in Karachi, Pakistan.

Mr. Sachinvala, Dinshaw was holding 50% stock of London Typographers, Inc. he has given special deal to new Indian owner of London Typographers, Inc. on condition that he will do his immigration, issuing employment letter etc. ...

The INS required the petitioner to appear for an interview on March 18, 1981. At that interview the attorney for petitioner and beneficiary told the examiner that Quirashi's letter disputing Sachinvala's qualifications was the result of a disagreement between Quirashi and the beneficiary, and that in any event the current president Mathai wished to proceed with the application and the former president had no authority to revoke the petition endorsed by the company and not by him personally.

On March 31, 1981 Quirashi wrote a sworn letter to the INS retracting his earlier statements about Sachinvala:

On advise of counsel, I discovered that the petition was filed by London Typographers, Inc., and not by me personally, and therefore I do not have the power to withdraw it. My request should therefore not be entertained, and be considered of no validity.

With regard to the statement as to previous employment, I wish to retract this statement.

On May 24, 1983, no action having been taken on the petition for two years, a delay unaccounted for by the service, the INS instructed Sachinvala and petitioner to resubmit its corporate charter and 1979, 1980 tax returns. While the petitioner failed to submit its 1979 and 1980 federal tax returns, the return submitted for 1981 revealed that the petitioner had a net taxable income of minus $38,500.00, in contrast to its labor certification application which claimed a $150,000.00 net annual income. An unsigned financial statement and a let-

ter from petitioner's accountant Wesley Parker explaining that the negative net income of petitioner was the result of $38,-508.00 of accumulated losses over the eight years of petitioner's existence and that any shortfall was made up by a capital contribution of an unspecified shareholder not reflected on the financial documents submitted.

On July 19, 1983 the District Director denied the petition for the following reasons:

A review of the documents submitted in support of your petition indicates that the beneficiary had eight (8) months' experience in typesetting and proofreading. It was found in the Matter of the Great Wall, 16 I. & N.Dec. 142 (A.R.C.1977), that in sixth preference visa petition proceedings this Service must consider the merits of the petitioners [sic] job offer, so that a determination can be made whether the job offer is realistic and whether the wage offer can be met. The instant petition and supporting documents were returned with Form I–72 requesting copies of the corporate tax returns for the years 1979 and 1980. The record now includes a copy of your corporate tax returns for the year beginning June 1, 1981 and ending May 31, 1982. The balance sheet for this period indicates that the ratio of liabilities to assets was approximately 7 to 1 and that the corporation had retained earnings of negative $38,508.00. You have offered no other evidence to establish that you were able to meet the wage offer as of December 21, 1979, the filing date of the instant petition.

Therefore, it is concluded that you have failed to establish that the beneficiary had the required experience and that you were able to meet the wage offer.

On approximately July 27, 1983, petitioner appealed the District Director's decision to the Regional Commissioner who affirmed the decision of the District Director. By opinion of January 25, 1984, the Regional Commissioner observed in relevant part:

The petitioner must establish that the beneficiary possesses all of the minimum requirements specified in the job offer, as of the filing date of the petition; Matter of Wing's Tea House, 16 I. & N.Dec. 158 (Acting R.C.1977). The minimum requirements call for four years experience in the job being offered. A review of the evidence submitted fails to establish the requisite experience. Counsel on appeal argues that the service's conclusion as to lack of experience is totally unsupported and that "there is nothing that reflects that the alien has 8 months experience." Counsel's incredible statement flies in the face of the very evidence submitted by him which clearly states "... (beneficiary) was appointed on 1st October, 1965 at our press for Typesetting and Proofreading. He worked in this position for 8 months." Even if we assume arguendo that the petitioner is capable of paying the proffered wage, the requisite experience has not been shown.

On April 17, 1984, petitioner moved to reopen the decision of the Regional Commissioner. Petitioner submitted affidavits from two of Sachinvala's alleged former customers at Jupiter Services and a March 3, 1984 letter from an alleged partner at Jupiter Services which attempted to clarify the May 4, 1970 letter which had been written fourteen years prior by a different partner at Jupiter Services. This clarification letter asserted that the INS had misread the first letter:

We never intended to convey the meaning that he worked only for 8 months type setting and proof-reading. We meant that after 8 months, his duties in addition to typesetting and proofreading expanded to include electrical control repair of the press equipment ... We confirm that Mr. Dinshaw R. Sachinvala had worked entire 4½ years in typesetting proofreading, using Gujrati, Urdu, Persian and English. He is highly proficient and possesses excellent experience.

On July 30, 1984, the American Consul in Karachi, Pakistan, responding to the inquiries of the Regional Commissioner seeking to verify the existence of Jupiter Ser-

vices, sent the following letter to the Regional Commissioner:

Sidsons Building [*] is a four story building, three of which are residential flats. The ground floor is occupied by primarily electronic parts and auto spare part shops. There is no evidence of a printing-design shop there.

The son of the landlord, who has owned the building since 1960, said he had no knowledge of Jupiter Services of Mian Rasheed Muslim being tenants of the building. Another tenant (since 1947) said the same. The current tenant of # 2 Sidsons Building said he has occupied since 1978, the space formerly held by Sachinvala Institute, a private training institute for radio/TV mechanics and radio officers.

Since, according to file, Jupiter Services supposedly co-occupied space with Sachinvala Institute which was owned by the beneficiary we cannot expect to get any more accurate information about the previous existence of the firm. We can, however, confirm that Jupiter Services does not now exist at Sidsons Building on Preedy Street.

On Approximately August 17, 1984 the Regional Commissioner informed petitioner's attorney of this letter from the consulate and invited him to submit rebuttal evidence to this letter within fifteen days in further support of his motion to reopen the decision of the Regional Commissioner (Complaint Exhibit "G"). In response to this letter, attorney for the petitioner mailed additional evidence on October 16, 1984 to the District Director but not directly to the office of the Regional Commissioner.

On October 17, 1984, the Regional Commissioner granted the motion to reopen the denial of the petition, but simultaneously reaffirmed his decision of January 25, 1984, stating:

The District Director originally denied the petition and the denial was upheld by the Regional Commissioner for failure of the petitioner to establish that the beneficiary has the requisite experience.

Petitioner, through counsel, submits new evidence in the form of a notarized attestation from a partner in a firm which was subsequently found by the American Consul in Karachi to be nonexistant, as well as two statements from acquaintances of the beneficiary who, although engaged in business in unrelated industries, purport to establish beneficiary's qualifications based upon occasional visits to his shop over fifteen years ago. Counsel was afforded the opportunity to rebut the evidence obtained from the American Consul, yet has remained silent.

In view of the extremely questionable value of the evidence submitted, we find no reason to change our previous decision.

Petitioner's rebuttal evidence was not received or taken into consideration in the Regional Commissioner's final denial of the petition. However, by letter of November 14, 1984 the Commissioner acknowledged the late receipt of the additional material and stated that, "It will be entered into the record and, if appropriate, it will be considered as if it had been received within the stipulated period." (Complaint Exhibit "J"). Neither this letter nor the additional evidence submitted on October 16, 1984 appears in the administrative record. By letter of December 31, 1984 the Regional Commissioner informed petitioner's counsel that the new evidence received after the October 17, 1984 denial of the petition did not alter the Regional Commissioner's decision (Complaint Exhibit "L").

**Discussion**

Petitioner asserts three claims in this appeal whose review jurisdiction is based on the Administrative Procedure Act 5 U.S.C. §§ 701 *et seq.* First, petitioner claims that the Regional Commissioner's denial of sixth preference status was an abuse of discretion pursuant to 5 U.S.C. § 706(2)(A) & (E), contending that the denial was contrary to applicable laws and regulations and is unsupported by substantial evidence. Second, the petitioner asserts that the Regional Commissioner had no

jurisdiction over the appeal taken from the decision of the District Director. Finally, petitioner claims that the service's two and one-half year delay in ruling on the visa petition estops the service from denying the visa preference. All three contentions are rejected.

**Abuse of Discretion**

The petitioner claims that Sachinvala's application for preference status and supporting letters demonstrated that he possessed the requisite experience as a typesetter and proofreader, and that the Regional Commissioner's contrary determination was an abuse of discretion. Furthermore, the petitioner claims that the Regional Commissioner's gathering of information from the American Consulate in Karachi, Pakistan on the status of Jupiter Services was an abuse of his authority to rule on appeals from the office of the District Director.

■ The grant or denial of a visa preference is within the discretionary powers of the INS, and this court's review is limited to determining whether the INS abused its discretion. *North American Industries, Inc. v. Feldman,* 722 F.2d 893, 898 (1st Cir.1983); *Mila v. District Director of Denver,* 678 F.2d 123, 125 (10th Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 952 (1983); *Song Jook Suh v. Rosenberg,* 437 F.2d 1098 (9th Cir.1971). It is settled law in this Circuit that abuse of discretion is shown only if the decision under review was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group, *Li Cheung v. Esperdy,* 377 F.2d 819 (2d Cir. 1967); *Wong Wing Hang v. Immigration and Naturalization Service,* 360 F.2d 715, 719 (2d Cir.1966). Within this inquiry it is the petitioner or beneficiary who must carry the burden of proving that he is eligible for the preference benefit, *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305 (9th Cir.1984); *K.C.P. Food Co., Inc. v. Charles C. Sava,* 623 F.Supp.

1080 (S.D.N.Y.1985), *citing In Re Brantigan,* 11 I. & N.Dec. 493, 495 (B.I.A.1966).

The court's role in this abuse of discretion inquiry is narrowly defined, as it is limited to review of the administrative record of the proceedings below. *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, supra,* 736 F.2d at 1308, and must give deference to the construction of the statutes which it is charged with enforcing. *De Los Santos v. INS,* 690 F.2d 56, 59–60 (2d Cir.1982); *Bertrand v. Sava,* 684 F.2d 204, 211–217 (2d Cir.1982) (the court is not entitled to substitute its own judgment for that of the Director of the INS).

■ London Typographers and Sachinvala claim that the Regional Commissioner's finding that Sachinvala lacked the requisite proofreading and typesetting experience, the sole issue raised in the appeal, was an abuse of discretion. A review of the evidence before the INS demonstrates, however, that the beneficiary failed to prove that he had the four years experience which petitioner requested in its labor certification application.

Petitioner's submission of the letter of May 4, 1970 from a purported managing partner of Jupiter Services stated that Sachinvala "was appointed on 1st October 1965 at our Press for Type-setting and Proofreading. *He worked in this position for 8 months and later even undertook to perform electric control repairs of press equipments.*" (emphasis supplied). The INS' initially determined the language to mean that Sachinvala possessed only eight months of the requisite experience. While petitioner submitted evidence to rebut this charge of lack of experience in support of his petition to reopen the Regional Commissioner's affirmation of the decision of the District Director, this rebuttal evidence was equivocal at best. Although the March 3, 1984 letter from Jupiter Services purporting to clarify the 1970 letter states that Sachinvala did have 4½ years experience as a typesetter, this correction letter was written by a different partner and apparently relied on company records of Sachinvala's employment fourteen years

previously. In addition, the investigation of the American Consulate in Karachi dated July 30, 1984, showed that Jupiter Services did not exist at Preedy Street, Sidsons Building as of the time of the report. This discovery also casts doubt on the validity of the March 3, 1984 letter, as it lists the same incorrect address as was submitted with the original letter in support of the petition.

Nor can the two additional letters in support be considered conclusive evidence of the beneficiary's typesetting abilities. Although the two sworn statements of the beneficiary's former customers stated that they saw Sachinvala typesetting and printing for Jupiter Services, the Regional Commissioner had reason to discount the validity of these statements in light of the American Consulate's finding that Jupiter Services no longer existed at the Preedy Street address, and that the son of the landlord and various building tenants who owned the building since 1960 disclaimed any knowledge of Jupiter Services. Although the petitioner and beneficiaries claim that Jupiter Services had co-occupied the Sidsons Building space with the Sachin Institute, this electronics and radio training institute was founded and owned by the beneficiary.

While the quoted language of the 1970 letter in my view is equally subject to the interpretation sought by petitioner, namely that Sachinvala had performed the duties of a typesetter for four years, this court cannot conclude that the Regional Commissioner's finding was without rational explanation given the questionable aspects of the proof submitted. *Li Cheung v. Esperdy, supra, Wong Wing Hang v. INS, supra.* This is particularly true in light of Quirashi's initial recantation of his support for the beneficiary's application. The Regional Commissioner was entitled to consider both the Quirashi letter of March 10, 1981 stating that Sachinvala never worked in the printing trade and that he was compensating the petitioner for its immigration support, and the Quirashi clarification letter of March 31, 1981 retracting and withdrawing the previous statements in his dis-

cretionary evaluation of Sachinvala's qualification for sixth preference status. This court is not empowered to encroach on the INS' discretionary authority to weigh conflicting evidence in absence of any indication of an abuse of discretion. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 864, 102 S.Ct. 3440, 3444, 73 L.Ed.2d 1193 (1982) (the INS has plenary power to make rules for the admission of aliens); *Immigration and Naturalization Service v. Jong Ha Wang*, 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) (the INS' denial of relief should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute); *Bertrand v. Sava, supra*, 684 F.2d at 211, 217 (2d Cir.1982) (Trial courts cannot substitute its own judgment and policy preferences for those of District Director).

Petitioner also contends that the Regional Commissioner's second affirmation of the decision of the District Director departed from established INS appeal procedures because the Commissioner had not received petitioner's rebuttal evidence to the consul's letter when he denied Sachinvala's preference visa.

Petitioner's complaint provides the only evidence of the submission of such rebuttal material to the office of the Regional Commissioner. On August 17, 1984 the Commissioner gave petitioner's counsel 15 days to rebut the evidence submitted by the American Consul in Karachi, Pakistan. On October 16, 1984 petitioner responded to this letter by delivering his rebuttal evidence to the office of the District Director rather than the office of the Regional Commissioner, just one day before the Regional Commissioner reaffirmed his earlier denial of the visa preference. This new evidence was eventually received by the Commissioner, who informed petitioner by letter of November 14, 1984 that the material would be considered as if it had been timely received and would be added to the administrative record. On December 31, 1984 the Commissioner did notify the petitioner that the new evidence did not alter his October 17, 1984 decision, however, the INS never

added this material to the administrative record, and only petitioner's counsel retained the originals of the letters pertaining to this consideration of additional evidence. The issue raised is whether the INS' failure to consider the evidence prior to the October 17, 1984 decision was arbitrary and capricious.

First, petitioner submitted the rebuttal evidence long after the fifteen-day period in which the Commissioner requested a response, and this submission was to the District Director in New York and not to the Regional Commissioner in Burlington, Vermont. Petitioner's counsel has offered no explanation as to the reason for his failure to make a timely reply.

In addition, a review of the Service's summaries of the additional material, which petitioner has not disputed, reveals that this "new" evidence is merely cumulative and does not render the Regional Commissioner's decision arbitrary and capricious or not supported by substantial evidence. Of the eleven additional documents submitted, four describe qualifications of the beneficiary irrelevant to his abilities as a typesetter, three consist of communications originating from Sachinvala or his attorney, two are letters from alleged former customers of Jupiter Services similar to those previously received by the Regional Commissioner, one is a letter from an unidentified person who attests to the existence of Jupiter Services at the Preedy Street address, and the last is a letter from Quirashi to the New York State Department of Labor which refers to Sachinvala as a foreign language typesetter.

These documents do not present additional material evidence which would have affected the administrative result. Indeed, the Commissioner accepted the new material as if it had been submitted in a timely fashion, but concluded that the evidence did not present anything to alter the previous decision. Under these circumstances, this court will not disturb the INS' evaluation of the evidence before it or substitute its own policy preference for those of the INS officials. *See Bertrand v. Sava, supra*, 684 F.2d 217; *Gordon & Gordon, Immigration Law and Procedure*, § 8–26–8–35, (1980).

## Appellate Jurisdiction

■ The petitioner also claims that the Regional Commissioner had no authority to consider his appeal from the District Director, but cites no relevant authority for this proposition. A review of the chronology of this action demonstrates that the office of the Regional Commissioner had jurisdiction over the appeal.

On or about July 27, 1983 the petitioner appealed the decision of the District Director, which appeal was dismissed by the Regional Commissioner on January 25, 1984. During the interim period on October 3, 1983, the authority to hear appeals from the denial of sixth preference visa petitions was transferred from the Regional Commissioner to the Associate Commissioner, Examinations, of the INS, *see* 48 Fed.Reg. 43160 (September 22, 1983). On April 17, 1984, the petitioner moved for a reopening and reconsideration of the appeal, but addressed the motion to the Associate Commissioner and filed papers at the office of the District Director. These papers were then forwarded to the office of the Regional Commissioner who reconsidered but reaffirmed his previous decision dismissing the appeal.

Neither of the parties can cite to any authority which grants or prohibits the Regional Commissioner from hearing the reconsideration motion on a validly entertained appeal. However, the courts must give deference to the Service's own interpretations of the immigration statutes, particularly here where there is an absence of contrary authority. *See United States v. Valenzuela-Bernal, supra*, 458 U.S. 858, 864, 102 S.Ct. 3440, 3444, 73 L.Ed.2d 1193 (1982); *INS v. Miranda*, 459 U.S. 14, 19, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982); *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977). As the Second Circuit stated in *De Los Santos v. INS, supra*, 690 F.2d 56, 60 (2d Cir.1982):

It is not the province of the courts to insist that INS' interpretations of the Act

result in the perfect immigration scheme, or even that they be the best interpretations possible. Rather INS is given a fair amount of latitude to exercise its judgment as to what interpretations will best effectuate the goals of the Act. (citations omitted).

The petitioner and beneficiary also argue that the Regional Commissioner exceeded his authority by requesting the United States Consulate in Karachi, Pakistan to investigate Jupiter Services. The petitioner relies, however, on regulations applicable to the Board of Immigration Appeals, an adjudicative body independent from the INS which does not have jurisdiction to review the denial of a sixth preference classification. *See* 8 C.F.R. § 3.1(b)(5).

On the contrary, there is substantial statutory authority for an investigatory role for the Regional and Associate Commissioner. The INS' power to enforce the immigration statutes is delegated by the Attorney General whose responsibilities are detailed in section 204 of the Act which provides in relevant part:

(a) ... any person desiring and intending to employ within the United States an alien entitled to classification as a preference immigrant under section 1153(a)(6) of this title, may file a petition with the Attorney General for such classification.

. . . . .

(b) After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitioners to accord a status under section 1153(a)(3) or 1153(a)(6) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made ... is eligible for a preference status under section 1153(a) of this title, approve the petition....

8 U.S.C. § 1154(a)–(b). All of the investigatory powers of the Attorney General relating to the immigration and naturalization of aliens are delegated to the INS by statute 8 C.F.R. § 2.1.

The petitioner has been unable to cite to any provision in the code of Federal Regulations which prohibit or restrict the Regional or Associate Commissioner's authority to conduct an independent investigation of facts surrounding the appeal, and this court can find no evidence of such a restriction. 8 C.F.R. §§ 103.3–103.5a.

**Estoppel**

█ Petitioners finally contend that the INS' two and one-half year delay in adjudicating this petition should estop the service from denying this visa. The petitioners cite several cases to support the proposition that delay in processing a visa application may constitute affirmative misconduct which would estop the INS from denying the petition. However, these cases all predate the Supreme Court's contrary conclusion in *Immigration and Naturalization Service v. Miranda, supra,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) in which the court held that neither the negligent delay in granting an immigrant visa nor the harm caused by that delay was sufficient to estop the INS' later denial of the visa. In reaching that conclusion, the court stated:

The only indication of negligence is the length of time that the INS took to process respondent's application. Although the time was indeed long, we cannot say in the absence of evidence to the contrary that the delay was unwarranted. Cf. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 [91 S.Ct. 814, 823, 28 L.Ed.2d 136] (1971) (presumption of regularity suports official act of public officer); *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15 [47 S.Ct. 1, 6, 71 L.Ed. 131] (1926) (same). Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable.

*Id.* at 18, 103 S.Ct. at 283 (footnotes omitted).

Furthermore, in *Miranda,* the beneficiary offered proof that the INS' delay had

caused him harm, as the beneficiary's wife, a United States citizen, withdrew her petition in support of her husband's immigration visa because of the deterioration of the marriage. In this case neither London Typographers nor Sachinvala has asserted facts which show that the delay prejudiced the outcome of the application for preference status, and under these circumstances there is no reason to apply equitable estoppel to the government's visa determination.

For the aforementioned reasons, the petitioner's motion for summary judgment is denied, and the INS' motion for judgment on the pleadings is granted. The decision of the Regional Commissioner is hereby affirmed, and the petitioner's complaint is dismissed.

IT IS SO ORDERED.