**DESIGN PAK, INC.**

v.

**James T. BAKER III, Secretary of the Treasury, Donna Pope, Director, United States Mint, Department of the Treasury, and Glen Carter, Assistant Director, Office of Procurement, Department of the Treasury.**

Civ. A. No. 85–4447–Z.

United States District Court,
D. Massachusetts.

May 30, 1986.

William M. Simmons, Gage & Tucker, Boston, Mass., for plaintiff.

Evan Slavitt, Asst. U.S. Atty., Boston, Mass., for defendants.

MEMORANDUM OF DECISION

ZOBEL, District Judge.

Design Pak, Inc., a manufacturer of packaging products, has moved to enjoin the United States Mint from executing a sole-source contract with a New York company [1] for the packaging of 1986 "prestige proof sets," which contain two Statue of

---

1. Unique Packaging Sales Company of Plattsburg, New York, an affiliate of the Canadian manufacturer, Universal Package Corporation of Montreal, Canada. Both companies are owned by the same Canadian citizens.

Liberty-Ellis Island commemorative coins in combination with a set of standard 1986 proof coins (penny, nickel, dime, quarter, and half-dollar). According to plaintiff, the prestige set is an annual set of proof coinage, mandated by 31 U.S.C.A. § 5132 (West Supp.1985), procurements for which are governed by the Competition in Contracting Act of 1984, 41 U.S.C.A. §§ 252–260 (West Supp.1985). In plaintiff's view, the decision of the Mint to contract with Unique Packaging on a sole-source basis for the manufacture of prestige cases violates this Act and should therefore be enjoined.

Defendant officers of the United States Treasury and Mint have moved under Rule 12(b)(1) or 12(b)(6), Fed.R.Civ.P., to dismiss the complaint. According to defendants, the prestige set is not a "regular 1986 proof set" governed by standard procurement laws; rather it is but one aspect of the Statue of Liberty-Ellis Island Commemorative Coin program which provides for the minting of special coins to celebrate the Centennial of the Statue of Liberty and to generate funds for its restoration. A special statute, the Statue of Liberty-Ellis Island Commemorative Coin Act, Title I, P.L. 99–61, 99 Stat. 113 (1985) ("Coin Act"), governs the minting and sale of coins under the program and provides that: "No provision of law governing procurement or public contracts shall be applicable to the procurement of goods or services necessary for carrying out the provisions of this title...." *Id.* at Sec. 107.

This Court has previously held that it lacks jurisdiction to review decisions under the Coin Act, because Section 107 precludes judicial review.[2] The issue raised by these motions, therefore, is whether the 1986 prestige proof set is governed by the Coin Act, in which case dismissal under Rule 12(b)(1) is called for, or by the Competition in Contracting Act, in which case plaintiff is entitled to a decision on the merits.

### Procedural History

On December 4, 1985, Design Pak filed its original complaint in two counts seeking to enjoin the United States Mint from continuing to procure paper boxes (Count One) and wooden cases (Count Two) for certain sets of Statue of Liberty Coins. Design Pak also sought a temporary restraining order and preliminary injunction to the same end. After a hearing on December 10, 1985, this Court dismissed the suit for lack of jurisdiction. Upon reconsideration, the Court vacated its dismissal order but denied Design Pak's request for a preliminary injunction on the same jurisdictional grounds, so that plaintiff could go forward with an immediate appeal. On December 12, 1985, the First Circuit denied Design Pak's request for an injunction pending appeal, stating that plaintiff had failed to meet the prerequisites for injunctive relief, but declining to reach the jurisdictional issue.[3] Design Pak then withdrew its appeal of the original denial of an injunction and agreed to allow the case to go forward in this Court on the merits.

On February 20, 1986, Design Pak amended its complaint, adding Count Three concerning packaging for the 1986 prestige proof set. On April 1, 1986, this Court dismissed Counts One and Two of the original and amended complaints for lack of jurisdiction under the Coin Act, leaving only Count Three. On May 15, 1986, this Court held a hearing on plaintiff's motion for a preliminary injunction on the prestige proof set count and on the government's motion to dismiss under Rule 12(b)(1) and 12(b)(6), Fed.R.Civ.P.

---

**2.** See procedural history, below.

**3.** Although the First Circuit did not decide the jurisdictional issue, it did indicate that the Coin Act might indeed preclude judicial review in cases such as this one. The Court stated that: "a substantial question remains whether Congress intended to withdraw jurisdiction for review from the courts. As a rule, jurisdiction is presumed unless Congress has specifically indicated an intent to withdraw the right of judicial review.... The Coin Act contains no such specific wording. Given the structure and history of the statute, however, the Government's argument is not without force." *Design Pak, Inc. v. Secretary of the Treasury,* 801 F.2d 525, 527, (1st Cir.1985).

*Findings*

This case is not clear-cut, nor could it be, because the object of the controversy is a hybrid. The 1986 prestige proof set is not a proof set, pure and simple, nor is it a straightforward product of the Statue of Liberty-Ellis Island Commemorative Coin program. The task facing this Court is to characterize a mixed offering: is the 1986 prestige proof set a regular proof set containing special coins, or a special proof set containing regular coins?

■ To answer this question I examine first the Treasury's contention that the Coin Act, with its waiver provision, governs prestige set procurements. Because the question of what statute applies does not require technical expertise, I am entitled to take a "hard look" at the Treasury's interpretation of the Coin Act. *Town of Brookline v. Gorsuch*, 667 F.2d 215, 220 (1st Cir.1981) (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C.Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed. 2d 701 (1971)). Nevertheless, the Agency's views deserve some deference, as long as they accord with the language, legislative history, and purpose of the statute. *North American Industries, Inc. v. Feldman*, 722 F.2d 893, 897 (1st Cir.1983).

Before deciding whether the Treasury's contention that the Coin Act's waiver applies to procurements for the prestige proof set is "reasonable, . . . and consistent with the intent of Congress in adopting the statute," *North American Industries*, 722 F.2d at 898 (quoting *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)), it is worth noting that the Agency's

position on this question has not been without ambiguity. As plaintiff has pointed out, Mint officials used a form designed for the Competition in Contracting Act to justify their sole source decision, thereby leaving open the inference that even they themselves thought ordinary procurement laws applied to the prestige proof set. Arguing against this inference, however, is the more concrete and therefore more persuasive fact that the contract with Unique Packaging carries the Contract No. TM–SOL–86–2006, the "SOL" referring specifically to the Statue of Liberty program.[4]

■ Assuming that the Treasury has, as it insists, consistently handled procurement for the prestige set under guidelines established for the Statue of Liberty program,[5] the question remains whether such treatment is consistent with the purposes of the Coin Act. I think it is.

The Statue of Liberty-Ellis Island Commemorative Coin Act was signed into law on July 9, 1985. The law provides for the minting of three different "Liberty" coins to celebrate the Centennial of the Statue of Liberty, with part of the proceeds from the sale of the coins going to the restoration and preservation of the Statue of Liberty and Ellis Island. Because the Statue of Liberty will be unveiled on July 4, 1986 and dedicated in October 1986, the statue specified a limited period for the issuance of the coins—from October 1, 1985 to December 31, 1986. Section 107 of the Act, providing for the general waiver of procurement laws for "goods and services necessary for carrying out the provisions of this title" was added partly to meet these timing requirements.[6]

---

4. Furthermore, if the affidavit of the Mint's Assistant Director for Procurement, Glenn H. Carter, is to be believed, the contract with Unique Packaging contained a stipulation that the company agreed "to all terms, conditions and specifications included herein and has read the 'notice' regarding the general waiver of Procurement Regulations." Though there is no reason whatsoever to doubt the veracity of Mr. Carter's statement, its weight is diminished by the fact that the government failed to supply the court with a copy of the contract.

5. In making this assumption, this Court has in mind that although it is to construe the complaint broadly and liberally on a Rule 12(b)(1) motion to dismiss, the burden of proof remains on the party asserting jurisdiction—in this case the plaintiff. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942).

6. The legislative history of the Coin Act, though scant, suggests that Congress intended to avoid program delays caused by the litigation of procurement decisions. In testimony at a hearing

■ In making its claim that the prestige proof set is not part of the Statue of Liberty-Ellis Island program, plaintiff has emphasized that the Mint does not market the prestige proof set along with other sets of liberty coins to a list of customers specially selected for the Statue of Liberty program. Rather the Mint markets it alongside the regular 1986 proof set in a brochure sent to the annual buyers of proof coins. Furthermore, plaintiff has pointed out that the box in which the prestige coins are packaged—the very box that is the subject of this lawsuit—does not contain the Statue of Liberty program logo. According to plaintiffs therefore, the prestige set has all the earmarks of an annual proof set. Indeed, it is a more complete set of 1986 coinage[7] than the "regular" 1986 proof set containing only a penny, nickel, dime, quarter, and half-dollar.

These arguments, while correctly pointing out what the prestige set has in common with an annual set of proof coins, miss an important point of emphasis. Though the prestige set is indeed marketed alongside the regular 1986 proof set in the Mint's 1986 proof set brochure, it is clearly pitched as an aspect of the Statue of Liberty program. The prospective buyer is told not that he or she should buy a complete set of 1986 coinage, as the plaintiff suggests, but rather that: "This set is made even more significant by the presence of the new Liberty 90 percent silver dollar and clad half-dollar." In the brochure's ten-sentence blurb extolling the prestige set, eight sentences describe the Statue of Liberty coins or program. Furthermore, the customer is told that "with each pres-

tige set purchase, you help to restore the Statue of Liberty and Ellis Island," referring explicitly to the "special Act of Congress" that created the program.

Furthermore, the government does not merely exploit Miss Liberty for her marketing potential, it puts its money where its mouth is. For each prestige set sold, $37.50 of the $48.50 total price goes to the Statue of Liberty program, leaving only $11.00—the price of a regular 1986 proof set—to go presumably to the ordinary proof set account.

Taken together, the contract number, the marketing emphasis, and the allocation of funds argue overwhelmingly that the 1986 prestige set is indeed a special proof set containing regular coins, rather than a regular proof set containing special coins. The provisions of the Coin Act therefore govern procurements for the prestige set. Because the Coin Act applies, this case is dismissed under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction. As the dismissal is grounded in a jurisdictional defect, it is unnecessary to reach defendant's second ground for dismissal—the failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P.—or plaintiff's various arguments on the merits.

---

on the Coin Act, Katherine D. Ortega, Treasurer of the United States, stated specifically that: [T]he proposed legislation authorizes a general waiver of the procurement regulations. The procurement rules assume competitive bidding which reduces the cost, guarantees the quality of services provided, and maintains fairness in Government contracting. However, the procurement requirements also offer opportunities to disappointed bidders to challenge the low bid award and in turn delay implementation of the program. Therefore, in this instance the waiver would be useful in meeting the very demanding time frame and

marketing program in a venture of this nature. We will establish our own internal control regulations to make sure the procurement process is fair yet fast. *Statue of Liberty-Ellis Island Commemorative Coin Act: Joint Hearing Before the Subcomm. on Consumer Affairs of the House Comm. on Banking and Urban Affairs and the Senate Comm. on Banking, Housing and Urban Affairs,* 99th Cong., 1st Sess. 39 (1985).

7. Plaintiff emphasizes that Statue of Liberty coins are legal tender.