Aurora Gazmin NAVARRO,
Plaintiff-Appellant,

v.

DISTRICT DIRECTOR OF the UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant-Appellee.

No. 76-1779.

United States Court of Appeals,
Seventh Circuit.

April 12, 1978.

---

5. *See, e. g.,* 1973 U.S.Code Cong. & Admin.News, pp. 2948–49; 1964 U.S.Code Cong. & Admin.News, pp. 2923–26.

Renato L. Amponin, Chicago, Ill., for plaintiff-appellant.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., Philip Wilens, Chief, Government Regulations & Labor Section, Crim. Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

## ON PETITION FOR REHEARING

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

This case is now before us on defendant's petition for re-hearing.

Our opinion dated September 13, 1977 (562 F.2d 1024) was rendered without our attention having been called to Section 205 of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1155, or to 8 C.F.R. 204.4(b) 1972. Now that our attention had been drawn to these crucial matters, we withdraw our September 13, 1977 opinion and vacate our judgment which had vacat-

* Senior District Judge Charles E. Wyzanski, Jr. of the District of Massachusetts is sitting by designation.

ed the District Court's judgment. Informed by new briefs filed by the parties, we approach this case afresh.

Plaintiff is an alien who, relying on the Declaratory Judgment Act, 28 U.S.C. § 2201, seeks a declaration that by virtue of a notice, dated October 4, 1971, she has a valid effective, unrevoked third preference status under Section 203(a)(3) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(3). Defendant is the District Director of the Immigration and Naturalization Service, who issued the aforesaid October 4, 1971 notice, but who on November 13, 1973 notified plaintiff that she failed to qualify under Section 203(a)(3), and who on February 8, 1974 notified her that she was required to depart from the United States on or before March 8, 1974.

The following are the facts disclosed by the administrative record of the Immigration and Naturalization Service.

Plaintiff, Mrs. Navarro, is a native-born citizen of the Philippines. In April 1968 Dagupan Colleges School of Nursing in the Philippines awarded her, on the basis of 5 years study, a diploma as a graduate nurse. In the same year the Philippine government gave her a license to practice as the equivalent of a registered nurse. From 1968 to 1971 she was employed in the Philippines as a nurse.

January 18, 1971 the United States Department of State, under Section 101(a)(15)(J) of the Immigration and Nationality Act, issued to plaintiff a certificate of eligibility for exchange visitor status. This enabled her to engage from February 1, 1971, to January 31, 1972 at Kansas City General Hospital and Medical Center in "an approved course in graduate nurses' training for qualified foreign nurses."

August 11, 1971, after her arrival in the United States, plaintiff filed with the Immigration and Naturalization Service [INS] a petition for classification, under § 203(a)(3) of the Act, as a "third preference immigrant," that is, "an alien who is a member of the professions."

October 4, 1971, on Form 1–464E (Rev. 2–1–71)N, the INS sent to plaintiff a "Notice of Third . . . Preference Petition Approved Under Section 203(a)" of the Act. In the text of the notice was a box with the heading "Validity" and with the statement that "[t]he approval of a petition for third or sixth preference classification is valid for as long as the supporting labor certification is valid and unexpired, provided in the case of a petition for third preference classification there is no change in the beneficiary's intention to engage in the indicated profession . . . ." It was further noted, "The petition has been approved. The petition states that the beneficiary is in the United States and will apply for adjustment of status to that of a lawful permanent resident. A visa number is not presently available; therefore, the beneficiary may not apply for adjustment of status to that of a permanent resident. The beneficiary has been or will be notified concerning his stay in the United States."

An undated, unsigned Form 1–461 (Rev. 1–27–70), on the stationery of the INS, reached plaintiff possibly together with, or shortly before or after, Form 1–464E (Rev. 2–1–71)N. The opening paragraph informed plaintiff that:

"The preference visa petition filed in your behalf has been approved. However, an immigrant visa is not now available to you. Therefore, you are not eligible at this time to apply for adjustment of your status to that of a lawful permanent resident. Under the circumstances you are hereby granted permission to remain in the United States until further notice. Continuation of this privilege is conditioned upon your retention of the status established in the approved petition."

It should be noted that the just-quoted grant of permission to remain in the United States appears only in an apparently unsigned letter and is not mentioned in the October 4, 1971 Form 1–464E (Rev. 2–1–71)N.

After plaintiff's contract with the Kansas City General ended, she applied to the Mis-

souri State Board of Nursing to take the 1971 examination because she had not studied sufficient psychiatry. In 1972 she completed her units in psychiatry by taking courses at Penn Valley Community College. Plaintiff then took in December 1972 and again in March 1973 the state nursing examinations. She passed the Medical, Pediatric, and Obstetrics examinations, but failed the Surgical and Psychiatric examinations. Nonetheless, the Missouri State Board of Nursing approved the Trinity Lutheran Hospital's hiring plaintiff as an unlicensed practical nurse.

According to plaintiff's evidence, the state board did not allow plaintiff to take the examinations in June 1973 because there were too many applicants. But the Board advised her to take them in September, 1973.

July 11, 1973, the District Director wrote plaintiff as follows:

Dear Mrs. Navarro:

On September 20, 1971, your petition to accord you third preference status as a registered nurse was approved, and you were permitted to remain in the United States pending availability of a visa number. Although you have been in the United States since February 10, 1971, you have not yet been licensed as a registered nurse by the Missouri State Board of Nursing.

Since you have failed to qualify as a registered nurse in over two years following entry, it does not appear you should have been accorded third preference; and this office contemplates revocation of the approved visa petition. You may furnish evidence by July 31, 1973, as to why you do not think the petition should be revoked. If the petition is revoked, you will have the right of appeal to the Regional Commissioner of the Service.

Sincerely,
H. I. Major
District Director

July 17, 1973 plaintiff, in reply to the District Director's letter, set forth alleged facts as to why her approved third preference petition should not be revoked.

November 13, 1973, following Mrs. Navarro's third unsuccessful attempt to pass the Missouri nursing examination, the District Director gave this explanation of his action:

On July 11, 1973, you were put on notice of our intention to revoke your third preference petition approved September 20, 1971, because you had not qualified as a registered nurse in the state of Missouri. Because of your representations that you had been approved to rewrite the Missouri State Board of Nursing examination in September, 1973, you were informed that a decision would be deferred pending results.

Your petition for third preference was approved because you claimed you expected to be employed as a member of the professions. Inasmuch as you again failed to pass the licensure test of the Missouri State Board of Nursing on September 12–13, 1973, you have not as yet qualified as a registered nurse, but have had to accept employment in a lesser capacity. Since you entered the United States on February 10, 1971, to take Graduate Nurse Training, it is believed you have had ample opportunity to qualify as a registered nurse.

You have failed to establish that you qualify as a member of the professions as outlined in Section 203(a)(3) of the Immigration and Nationality Act, as amended.

Plaintiff appealed to the Regional Commissioner. January 23, 1974, the Regional Commissioner "upheld" the District Director's decision, and on August 26, 1974, he, with opinion, denied a motion to reconsider. Meanwhile, February 8, 1974 the District Director, on Form 1–210 (Rev. 9–1–70)N, notified plaintiff that she was "required to depart from the United States . . . on or before March 8, 1974."

Following the Regional Commissioner's refusal to reconsider his decision, plaintiff brought this action, October 16, 1974, against defendant District Director. The latter filed a motion to dismiss the complaint and for summary judgment. July 17,

1975 the District Judge granted the motion for reasons set forth in an accompanying memorandum. While expressing the view that plaintiff had proceeded improperly and prematurely, that she should have awaited a deportation order, and that she presented no actual case or controversy, the judge, nevertheless, declared that "the complaint fails to allege any basis for finding that the action of the District Director of the Immigration and Naturalization Service was arbitrary or capricious, or was in excess of his legal authority."

From the District Court's judgment dismissing the complaint, plaintiff has appealed to this Court.

The initial question is whether the District Court correctly held that it had no jurisdiction of this case because the only available judicial remedy for Navarro was to await a deportation order and then, if she chose, to petition for a writ of habeas corpus.

■ We differ from the District Court's conclusions on jurisdiction. What plaintiff now seeks includes a declaration that, by virtue of the notice of October 4, 1971 on Form 1–464E (Rev. 2–1–71)N, she has a valid effective, unrevoked third preference status. If she does, it follows that when a visa does become available at a consular office she, no matter where she is then living, will have a priority in securing that visa, if she is otherwise qualified for entry. Independently of deportation, this is a valuable right. We are of opinion that the Declaratory Judgment Act, 28 U.S.C. § 2201, furnishes a basis for her invocation of federal question jurisdiction, 28 U.S.C. § 1331(a), to have this right declared, and that she need not await a deportation order.

We do not rely for jurisdiction on the Administrative Procedure Act, inasmuch as that channel of review seems blocked by the opinion and judgment in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

■ While this Court has jurisdiction to determine plaintiff's right to maintain the status conferred upon her by the October 4, 1971 notice, we must make our determination upon the administrative record before the INS. Cf. *Song Jook Suh v. Rosenberg*, 437 F.2d 1098, 1102 (9th Cir. 1971); *Wang Ching Shek v. Esperdy*, 304 F.Supp. 1086 (S.D.N.Y.1969). We do not agree with the implications in plaintiff's prayers that the District Court was empowered to conduct a *de novo* hearing to determine "whether the plaintiff . . . is eligible and qualified for Third Preference Status" or whether plaintiff is "a professional as said term is defined in Section 203(a)(3)" of the Act. See *Kessler v. Strecker*, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082 (1939).

Bearing in mind that it is the executive branch of government which initially determines whether to issue a warrant for arrest of an alien believed to be deportable and which, in appropriate cases, issues warrants for deportation, and recognizing that an order directing an alien to depart does not purport to be either a warrant for arrest or a warrant for deportation, we see no basis for the prayers in plaintiff's complaint asking the District Court to "review the record of the Administrative body and its order directing the departure of the plaintiff" and "restraining the defendant from enforcing the departure of the plaintiff . . from the United States pending the final determination of the case." See *Kladis v. INS*, 343 F.2d 513, 515 (7th Cir. 1965). If the pleading had been properly drawn, the District Court no doubt would have seen that it had federal jurisdiction limited to the issues as to what status if any plaintiff had as a result of the October 4, 1971 notice and of the later administrative revocation of an approved petition.

Coming to the merits of the issues before us, we are faced with the text of the October 4, 1971 notice accompanied by a letter on INS stationery. Indubitably, the notice says that the status of third class preference is "valid for as long as the [Secretary of Labor's] supporting labor certificate is valid and unexpired, provided in the case of a petition for third class preference classification there is no change in the beneficiary's intention to engage in the indicated [nursing] profession."

Unfortunately, neither the notice nor the letter calls attention to Section 205 of the Act, 79 Stat. 916, 8 U.S.C. § 1155 which provides that:

"Sec. 205. The Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under Section 204. Such revocation shall be effective as of the date of the approval of any such petition. . . ."

In the just quoted section 205 the reference to section 204 makes it appropriate to set forth the following part of section 204, 8 U.S.C. § 1154:

"Sec. 204(a) . . . any alien desiring to be classified as a preference immigrant under section 1153(a) of this title . . may file a petition with the Attorney Counsel for such classification. . . .

(b) . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien . . . is eligible for a preference status under section 1153(a) of this title, approve the petition . . . .."

Thus, although the District Director did not so inform the alien, the Attorney General had been given by Section 205 of the Act a power, "at any time, for what he deems to be good and sufficient cause," to revoke his approval of plaintiff's petition.

This broad statutory grant of authority to the Attorney General was explicitly preserved by 8 C.F.R. 204.4(d) and 205.2 (1972) which provided that:

"204.4(d) *Revocation.* The validity of any petition under this section [§ 204 of the Act] may be revoked pursuant to the provisions of Part 205 of this chapter [§ 205 of the Act] prior to the time limitations set forth herein."

"205.2 *Revocation on Notice.* The approval of a petition made under section 204 of the Act and in accordance with Part 204 of this chapter may be revoked on any ground other than those specified in § 205.1 by any officer authorized to approve such petition when the propriety of such revocation is brought to the attention of the Service, including requests for revocation or reconsideration made by consular officers."

We are thus faced with these questions: (1) did the Attorney General or his delegate find good and sufficient cause for revoking the approval of plaintiff's petition for third preference status; and (2) if so, is the Attorney General or his delegate estopped from relying on that cause because of representations made when the petition was approved?

The first question demands a reading of the notices sent by the District Director to the plaintiff.

In his July 11, 1973 letter, the Director wrote to plaintiff that "Since you have failed to qualify as a registered nurse in over two years following entry, it does not appear you should have been accorded third preference; and this office contemplates revocation of the approved visa petition." The uncontradicted evidence supports the first clause: that is, the finding that the plaintiff had failed to qualify as a registered nurse in over two years following entry. The second clause has a logical fallacy: that is, it states that a situation which occurred only in 1973 is a reason for not having granted a petition in 1971. However, the logical error in the second clause may be ignored inasmuch as the first clause furnishes both logical and policy grounds adequate to justify the Attorney General's delegate stating that his office contemplates revocation of the approved visa petition.

Moreover, the Director's November 13, 1973 letter clarifies any ambiguity in his July 11 letter. This second letter begins with the sentence "On July 11, 1973 you were put on notice of our intention to revoke your third preference petition approved September 20, 1971, because you had not qualified as a registered nurse in the State of Missouri." The second letter then correctly recites, and the evidence proves, that plaintiff had not so qualified.

We conclude that the only reasonable interpretation of the foregoing correspondence is that it constitutes action by an

authorized delegate of the Attorney General revoking his 1971 approval of plaintiff's petition for third preference status. Obviously, both the plaintiff and the Regional Commissioner so interpreted the letters, for she appealed the District Director's decision to the Regional Commissioner and he upheld it. Finally, the District Director on the basis of the revocation notified plaintiff "to depart from the United States . . . on or before March 8, 1974."

We further conclude that the revocation was authorized by Section 205 of the Act. When the Attorney General's delegate finds that a person had not qualified as a registered nurse within two years after her admission to the United States, despite an indication that this was expected, the Attorney General may deem the person's failure so to qualify "good and sufficient cause" to "revoke the approval" of that person's petition "effective as of the date of approval of . . . such petition." Our conclusion is in accordance with *Wright v. INS*, 379 F.2d 275, 276 (6th Cir. 1976), *Scalzo v. Hurney*, 225 F.Supp. 560, 561, 562 (E.D.Pa.1963) affirmed, 338 F.2d 339 (3rd Cir. 1964), *Mantyke v. Sahli*, 161 F.Supp. 199 (E.D.Mich.1958).

■ Addressing the question of estoppel, we are *now* persuaded that there is neither a factual nor a legal basis for plaintiff's contention that the October 4, 1971 INS notice and the apparently accompanying letter constitute an estoppel precluding the Attorney General or his delegate from exercising the power of revocation conferred by Section 205 of the Act.

Neither the notice nor the letter refers to Section 205. Nothing in the text of either document expressly purports to waive or limit the Attorney General's power under Section 205. The October 4, 1971 notice points out that the validity of the third preference classification will terminate if the supporting labor certification terminates; but it does not imply that validity may not be terminated for other reasons. Obviously, for example, if the petitioner made a fraudulent statement in her petition, the Attorney General would not be estopped from revoking his approval on that ground even though it was not specified in the notice. We, on reflection, see no sound basis for distinguishing the right of the Attorney General to revoke his approval on the ground that petitioner did not, as expected, become a registered nurse in the United States, even though the notice confirming status did not specify that ground of potential revocation.

We may add that, taken as a whole, the record plainly indicates that the petitioner never was ignorant of the potential loss of her third preference status if she did not within two years qualify as a registered nurse. So in her case there is missing any element of reliance upon the failure of a 1971 notice to specify that her status would be revoked if she did not within two years become a registered nurse.

Because there was no representation by the Attorney General or his delegate that they would not exercise their Section 205 power to revoke the plaintiff's petition on the ground of her failure to qualify as a registered nurse, and also because plaintiff did not rely on such purported representation, there is no factual basis for plaintiff's contention that she is the beneficiary of an estoppel.

Out of an abundance of caution, we may add that we are not suggesting that the Attorney General or his delegate is subject to estoppel. That is an issue which we have not considered.

On the merits of the case, judgment of the District Court is AFFIRMED.