**UNITED STATES of America, Plaintiff,**

v.

**Ruben Hiciano PAEZ, Defendant.**

**Crim. No. 94–154 (PG).**

United States District Court,
D. Puerto Rico.

Oct. 5, 1994.

63

Antonio R. Bazán, Asst. U.S. Atty., Hato Rey, PR, for plaintiff.

Vilma María Dapena, Asst. Federal Public Defender, Old San Juan, PR, for defendant.

*OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

The defense in this case filed a motion to dismiss the indictment on August 23, 1994. In summary, it alleges that the defenses of equitable estoppel and entrapment by estoppel apply in this case.

Mr. Hiciano Páez is charged in a one count indictment with a violation of 8 U.S.C. § 1326(a) and (b)(2), illegal reentry after being deported subsequent to a conviction for commission of an aggravated felony. The Government alleges that the defendant pled guilty at the New York Superior Court of Onondaga County for criminal possession of a controlled substance (cocaine). On April 19, 1991, defendant was sentenced to a minimum of three years and a maximum of nine years. On December 31, 1991, a deportation hearing was conducted at the state of Louisiana. On January 29, 1992, defendant was deported from the United States to the Dominican Republic. The government alleges

that on October 15, 1993, defendant reentered the United States through Aguadilla, Puerto Rico illegally, that is, without having obtained express consent and permission from the Attorney General of the United States.

Prior to his deportation, in January 9, 1992, he was served with Form I–294. This form is used by the Immigration and Naturalization Service (INS) to advise deported aliens of the future consequences of an illegal reentry. According to the Form I–294 served in this case, Mr. Hiciano Páez was advised that

> By law (Title 8 of the United States Code, Section 1326) any deported person who returns without permission is guilty of a felony. If convicted he may be punished by imprisonment of not more than **two** years and/or a fine of not more that $1,000.00. (Emphasis added).

The Form in question is a pre-printed document signed by the District Director. It provides empty space to include the name of deportee and the country to which he or she is being deported. It also provides space for the signatures of the deportee, INS officer and witness to provided evidence that the Form was properly served. At the bottom left hand corner of the Form it reads "(Rev. 3–29–78)N." This notation means that the Form was last revised on March 29, 1978.

Subsection (b)(2) of the above mentioned statute was amended on November 18, 1988, to increase the maximum sentence from two years to fifteen years. Obviously, the Form I–294 that was served to the defendant still had not incorporated the amendments made to the law in 1988. Defendant contends that the erroneous and misleading action of the INS in advising the wrong penalties that he would encounter if he reenters the country bars prosecution, under equitable estoppel, for a more severe punishment.

■ Equitable estoppel is a doctrine invoked to avoid injustice in particular cases. *United States v. Government Development Bank,* 725 F.Supp. 96 (D.Puerto Rico 1989), citing *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). This doctrine has been defined by the First Circuit as a judicially devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity. *Phelps v. Federal Emergency Management Agency,* 785 F.2d 13 (1st Cir.1986). Courts invoke the doctrine when one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it acts to his or her detriment. *Federal Deposit Insurance Company v. Roldán Fonseca,* 795 F.2d 1102 (1st Cir. 1986).

■ The requirements of the doctrine are thus three: first, a material misrepresentation; second, reasonable reliance upon the misrepresentation; and finally, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation. *Falcone v. Pierce,* 864 F.2d 226 (1st Cir. 1988). The party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse … and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler,* 467 U.S. at 59, 104 S.Ct. at 2223.

■ From its earliest cases, the Supreme Court has decided that equitable estoppel will not lie against the Government as against private litigants. *See The Floyd Acceptances,* 74 U.S. 666, 19 L.Ed. 169 (1869), *Utah Power & Light Co. v. United States,* 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917). "It is enough to say that the United States is neither bound nor estopped by the acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Utah Power,* 243 U.S. at 408, 37 S.Ct. at 391. These principles were reiterated in *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). In this case, an agent of the Federal Crop Insurance Corporation advised a farmer that his entire crop qualified for insurance. Relying on the information the farmer applied and obtained crop insurance. After the

crop was lost, it was discovered that the agent's advice was erroneous and part of the crop was not eligible for federal insurance. The Supreme Court determined that "not even the temptation of a hard case" will provide a basis for ordering recovery contrary to the terms of the regulation, for to do so would violate "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.* at 385, 68 S.Ct. at 3.

Despite these decisions, dicta in more recent decisions have suggested the possibility that there might be some situation in which estoppel against the Government could be appropriate. It appears that the birth of this idea is found in *Montana v. Kennedy,* 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961). In that case, the Supreme Court rejected a petitioner's argument that a consular official's erroneous advice to petitioner's mother that she could not return to the United States while pregnant prevented petitioner from having been born in the United States and thus deprived him of United States citizenship. The Supreme Court finally stated: "we need not stop to inquire whether, as some lower courts have held, there may be circumstances in which the United States is estopped to deny citizenship because of the conduct of its officials." *Id.* at 314, 81 S.Ct. at 1341.

"The proposition about which we did not 'stop to inquire' in *Kennedy* has since taken on something of a life of its own. Our opinions have continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of 'affirmative misconduct' might give rise to estoppel against the Government." *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). *See INS v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); and most recently in *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1983), the Supreme Court stated

> we are hesitant ... to say that there are *no cases* in which the public interest in ensuring that the Government can enforce

the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government. *Heckler,* at 60, 104 S.Ct. at 2224.

"Court of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed." *Office of Personnel Management,* 496 U.S. at 2470, 110 S.Ct. at 2470. However, in that case the Supreme Court rejected the Solicitor General's proposition to adopt a flat rule that estoppel may not in any circumstances run against the Government. "We leave for another day whether an estoppel claim could ever succeed against the Government." *Id.* at 423, 110 S.Ct. at 2471.

██ Two important policy considerations support the Government's nonestoppel doctrine. First, is the protection of the constitutional principle of the separation of powers, as a liberal application of equitable estoppel against the government would allow courts to expand the powers of federal officials beyond legislative limits. *Phelps,* 785 F.2d at 17. Second, there is a strong policy interest advocating for the protection of the public fisc. It responds to the "need to protect the government against unscrupulous officials who may seek to profit through their fraudulent acts, possibly in collusion with private parties." *Falcone,* 864 F.2d, at 229. Furthermore, in *Heckler,* 467 U.S. at 60, 104 S.Ct. at 2224, the Supreme Court stated:

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant. . . .

Therefore, although the door has been slightly left open, no exceptions have been recognized by the Supreme Court. The First Circuit has already stated that the Supreme Court "has consistently refused to apply the equitable estoppel doctrine against the government, no matter how compelling

the circumstances." *Phelps*, 785 F.2d at 17, and *Fonseca*, 795 F.2d at 1108. "Thus, it is our Circuit's position that the defense of equitable estoppel cannot be raised as a defense against the Government." *United States v. Government Development Bank*, 725 F.Supp. at 104. This Court does not believe that this case is one of those possible exceptions.

 The purpose of Form I–294 is to inform the deported alien that an unauthorized reentry into the United States constitutes a felony. It is not to inform the alien the precise penalty for the felony. The defendant was aware that his reentry constituted a felony and, nevertheless, willfully chose to reenter the United States. Therefore, there is no misrepresentation on the part of the Government. The defendant cannot argue that the Government mislead him to believe that his conduct was legal. *See United States v. Pennsylvania Industrial Chemical Corp*, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973). The rule of law cannot be undermined because the defendant thought that the maximum penalty for his crime would be two years instead of fifteen years of imprisonment.

In the alternative, the defendant argues that the second estoppel doctrine, entrapment by estoppel, also applies in this case. The Court need not discuss this argument in detail because the defendant cannot show that a government official "erroneously advised him that the particular act for which he was convicted was actually legal at the time it was committed." *United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir.1994); *United States v. Smith*, 940 F.2d 710, 714 (1st. Cir.1991). Nor is the Government estopped from prosecution the defendant for more than two years for the reasons enumerated above. Furthermore, the First Circuit has already determined that "even where the INS erroneously informed a deportee of the penalty faced upon reentry, such an error is not a mitigating factor justifying a downward departure under the Sentencing Guidelines." *Troncoso*, 23 F.3d at 616.

**THEREFORE,** defendant's motion to dismiss the indictment is hereby **DENIED.**

**IT IS SO ORDERED.**