**OMNI PACKAGING, INC. and Daniel Avila De La Rosa, Plaintiff,**

**v.**

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

**Civil No. 88–1960 (JP).**

United States District Court, D. Puerto Rico.

June 20, 1996.

Patrick D. O'Neill, Martínez, Odell & Calabria, Hato Rey, P.R., for Plaintiff.

Fidel Sevillano del Río, Assistant United States Attorney, Vivian Reyes López, Immigration and Naturalization, Service District Counsel, Hato Rey, P.R., for Defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it plaintiffs' numerous motions for adjudication (**docket Nos. 25, 31, 34, 38**) and defendant's oppositions thereto (**docket Nos. 29, 32, 36, 40**). The Court has also considered the replies, surreplies and supplements filed with respect to these motions. For the reasons that follow, plaintiff's motion is hereby **DENIED.**

## I. *Background*

Mr. Daniel Avila de la Rosa first entered the United States in March of 1985 as an intra-company transferee of plaintiff Omni Packaging, Inc. ("Omni"). Mr. Avila de la Rosa's brother is president of Omni. The District Office of the Immigration and Naturalization Service (INS) in San Juan, Puerto Rico, issued Mr. Avila de la Rosa an L–1 visa on March 27, 1985, for the period March 27, 1985, through March 31, 1987. The INS extended this visa on several occasions. In 1985, an L–1 visa was available to an applicant who immediately preceding the time of his application had been employed continuously for one year by a firm or corporation and who sought to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that was managerial, executive, or involved specialized knowledge. 8 U.S.C. § 1101(a)(15)(*L*). The INS granted Mr. Avila de la Rosa an L–1 visa on the grounds that he had been working for Omni in Mexico for at least one year before being transferred temporarily to Puerto Rico to continue to render his services in a managerial or executive capacity.

Regulations in effect in 1985 defined "managerial capacity" as:

> an assignment within an organization in which the employee directs the organization or a customarily recognized department or subdivision of the organization, controls the work of other employees, has the authority to hire and fire or recommend those actions as well as other personnel actions ... and exercises discretionary authority over day-to-day operations. This does not include the first-line level of supervision unless the employees supervised are managerial or professional.

8 C.F.R. § 214.2(1)(ii)(A). "Executive capacity" was defined as:

> an assignment within an organization in which the employee directs the management of an organization and establishes organizational goals and policies, exercises a wide latitude in discretionary decision-making, and receives only general supervision or direction from higher level execu-

tives, the board of directors, or stockholders of the business.

8 C.F.R. § 214.2(1)(ii)(B).

On September 19, 1986, Omni petitioned the INS to classify Mr. Avila de la Rosa as a member of the professions, pursuant to § 203(a)(3) of the Immigration and Nationality Act ("Act"). Section 203 provides for the allocation of immigrant visas. It states that after visas are made available to unmarried children of United States citizens, and to spouses and unmarried children of lawfully admitted aliens, visas shall be made available to "qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States." 8 U.S.C. § 1153. Omni and Mr. Avila de la Rosa sought this "third preference" classification because it would allow Mr. Avila de la Rosa to obtain an immigrant visa, thereby entitling him to reside permanently in the United States.

This Court discussed an immigrant's eligibility for a third preference classification extensively in its Opinion and Order dated March 27, 1990. *See Omni Packaging, Inc. v. U.S. Immigration and Naturalization Serv.*, 733 F.Supp. 500 (D.P.R.1990). Pursuant to 8 U.S.C. § 1182(a)(14), an alien seeking to perform skilled or unskilled work in the United States is excludable unless the Secretary of Labor determines that 1) there are insufficient workers who are able, willing, qualified and available at the time of application for the visa at the alien's place of employment and 2) the employment of the alien will not adversely affect the wages and working conditions of similarly employed workers in the United States. Third preference immigrant aliens are not exempt from exclusion under § 1182(a)(14). Therefore, one step in obtaining a third preference classification is to obtain the necessary labor certification. Securing such certification can be time-consuming since it involves attempting to recruit United States workers to fill the position and documenting those recruitment efforts. However, the Secretary of Labor took administrative notice that certain positions met these two requirements and published these

occupations in Schedule A at 20 C.F.R. § 656.10. Therefore, a blanket certification was available for the positions listed in Schedule A. Group IV of Schedule A permitted the certification of aliens that had been admitted to the United States to work in, and who were currently working in, managerial or executive positions with the same international corporations with which they had been continuously employed as managers or executives outside the United States for one year before they were admitted. 20 C.F.R. § 656.10. Plaintiffs relied on this provision in its third preference petition inasmuch as it did not have the required labor certification.

The INS denied OMNI's third preference immigrant petition on December 4, 1986; OMNI appealed this decision on December 16, 1986. On April 30, 1987, the Administrative Appeals Unit denied Omni's appeal for three reasons: 1) Omni had not conducted business for the one year required by statute prior to filing the preference petition; 2) Mr. Avila de la Rosa was not a manager or executive who would be eligible for third preference classification without the benefit of a labor certification; and 3) Mr. Avila de la Rosa was not a member of the "professions" as defined by applicable statute. On July 2, 1987, Omni filed a motion to reopen and reconsider the April 30, 1987, decision. In a letter dated August 24, 1988, the Administrative Appeals Unit granted Omni's motion to reopen and reconsider. Based on new documentation, the Administrative Appeals Unit found that Omni had conducted business for one year prior to filing the preference petition. Nonetheless, it upheld denial of the preference petition on three grounds: 1) Mr. Avila de la Rosa's duties as a technical support director/sales engineer were not managerial or executive in nature; 2) Mr. Avila de la Rosa's job was not within the "professions" under § 203(a)(3) of the Act; and 3) Omni failed to establish that Mr. Avila de la Rosa had the academic credentials necessary to qualify as a member of the "professions."

Omni and Mr. Avila de la Rosa brought the instant action alleging that denial of Omni's third preference classification petition was an abuse of discretion and/or arbitrary

and capricious. Omni alleged that Mr. Avila de la Rosa was a member of the "professions" based on his job duties, academic studies, training and past work experience. Omni also alleged that the INS acted capriciously and arbitrarily when it denied the third preference classification petition on the ground that Mr. Avila de la Rosa did not qualify for a blanket labor certification as an executive or manager when it had previously granted him an L–1 visa after finding that he was a manager or executive. This Court agreed that the INS's determination that Mr. Avila de la Rosa did not qualify for a blanket labor certification was arbitrary and capricious given that it had previously granted him an L–1 visa on the grounds that he had been working for Omni in Mexico for at least one year before being transferred temporarily to Puerto Rico to continue to render his services in a managerial or executive capacity. In an Opinion and Order dated March 27, 1990, this Court held that the INS abused its discretion when it determined that Mr. Avila de la Rosa was a manager or executive for purposes of an L–1 visa but not for purposes of a blanket labor certification. The Court entered judgment remanding the case to the INS to reconsider its decision and to explain the change in circumstances warranting the denial of the Class A, Group IV blanket certification and third preference petition after granting and extending the L–1 visa.

In an amended decision dated December 18, 1990, affirming its denial of the third preference petition, the INS explained the inconsistency in its grant of the L–1 visa and denial of the blanket labor certification for purposes of the third preference visa. The INS explained that the L–1 visa and extensions thereto were granted erroneously. The Puerto Rico district office of the INS originally granted the L–1 visa erroneously, given that none of the supporting documentation accompanying the L–1 petition warranted a finding that Mr. Avila de la Rosa was a manager or executive. The Eastern Service Center in St. Albans, Vermont, erroneously granted extensions to the L–1 visa and failed to detect the Puerto Rico district office's error because the petitions for extension were not accompanied by the supporting documentation that accompanied the original L–1 visa petition. The INS also reiterated in its December 18, 1990, amended decision that its original denial of the third preference petition was also based on a determination that Mr. Avila de la Rosa was not a professional within the meaning of Section 203(a)(3) of the Act as he did not have a minimum of a baccalaureate degree in a specific field of study. Nor did the INS consider Mr. Avila de la Rosa to have the equivalent of such a degree based on substantial academic course work in a professional field combined with professional experience and achievement. According to the INS, experience which is substituted for education must include the theoretical and practical application of specialized knowledge required at the professional level of the occupation. In other words, the INS's view is that not just any on-the-job experience related to a professional activity may be substituted for academic education.

## II. *This Court's Subject Matter Jurisdiction*

To support this Court's subject matter jurisdiction, plaintiffs invoke general federal question jurisdiction, 28 U.S.C. § 1331; Section 279 of the Immigration and Nationalization Act, 8 U.S.C. § 1329; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. The Declaratory Judgment Act does not provide an independent basis of jurisdiction; it merely provides an additional remedy where the court has an otherwise valid jurisdictional basis to consider a case. *Karmali v. U.S. Immigration and Naturalization Serv.,* 707 F.2d 408 (9th Cir.1983).

8 U.S.C. § 1329 states: "The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter." "This subchapter" refers to Subchapter II of Chapter 12—Immigration and Nationality—of Title 8 of the United States Code. Section 1154, relating to the procedure for granting immigrant status, including petitions for preference status, is contained within Subchapter II of Chapter

12. Therefore, this Court has jurisdiction to review the denial of Mr. Avila de la Rosa's third preference petition.

■ The Court also has jurisdiction to review denial of a preference petition pursuant to the APA. *See Lechich v. Rinaldi,* 246 F.Supp. 675, 679 (D.N.J.1965) (District Court has jurisdiction under APA to review refusal to revalidate preference petition).

### III. *Discussion*

#### A. Standard of Review

■ "[T]he decision to grant or deny a petition to obtain a preferential immigration classification is one that is within the discretion of the INS, and thus, a federal court may reverse an INS denial of a preference classification only if the INS abused its discretion." *North Am. Indus., Inc. v. Feldman,* 722 F.2d 893 (1st Cir.1983). "INS abuses its discretion if it bases its decision upon an improper understanding of the law or if there is no evidence to support the decision." *Id.* (citing *Mila v. Dist. Director of Denver,* 678 F.2d 123, 125 (10th Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 952 (1983); *Kaliski v. Dist. Director of Immigration and Naturalization Serv.,* 620 F.2d 214, 216 n. 1 (9th Cir.1980)). The petitioner or beneficiary carries the burden of proving that he is eligible for the preference benefit. *E.g., Omni Packaging, Inc. v. U.S. Immigration and Naturalization Serv.,* 733 F.Supp. 500, 502 (D.P.R.1990) (citing *Bowman Transp., Inc. v. Ark.–Best Freight Sys.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975)); *Tongatapu Woodcraft Haw., Ltd. v. Feldman,* 736 F.2d 1305 (9th Cir.1984).

Under the APA, this Court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

#### B. Did the INS Act Arbitrarily and Capriciously or Otherwise Abuse Its Discretion in Denying the Third Preference Visa Petition?

■ As noted above, the INS denied plaintiffs' petition that Mr. Avila de la Rosa be granted a third preference visa on three grounds: 1) Mr. Avila de la Rosa was not a manager or executive and therefore was not eligible for a blanket labor certification; 2) Mr. Avila de la Rosa was not a member of the "professions" within the meaning of § 203(a)(3) of the Act; and 3) Mr. Avila de la Rosa did not have the academic credentials necessary to qualify as a member of the "professions." We have reviewed each of these determinations and find none arbitrary, capricious or an abuse of discretion.

The third preference petition describes Mr. Avila de la Rosa's job duties as:

> [S]ervice and support for the maintenance of packaging equipment; conduct sales of packaging equipment, provide technical support to clients in Puerto Rico and the U.S.; development of new techniques; provide maintenance for packaging equipment sold to customers; to provide technical services to clients relating to use, operation, and maintenance of existing-represented equipment; to provide technical training to employees of clients; to draw up sales and/or service contracts for products or services offered by Omni Packaging, Inc.; to assist to sell sophisticated processing and packaging equipment to the pharmaceutical industry in Puerto Rico and United States; to call on management representatives, such as engineers, architects or other professional and technical personnel, at the client's establishments in an attempt to convince them of the desirability and practicability of the processing and packaging equipment sold and distributed by Omni Packaging, Inc.; to develop and prepare cost estimates in connection with the client's use of the proposed equipment.

This description corresponds to that of a sales and technical support specialist rather than that of an executive or manager. The fact that these sales involved sophisticated packaging equipment does not change the essential nature of Mr. Avila de la Rosa's job: to sell and service equipment sold to the pharmaceutical industry. There is no indication in this description that Mr. Avila de la

Rosa supervised other employees or, if he did, the duties and level of those employees. Nor does this description support the notion that Mr. Avila de la Rosa directed the management of Omni and established organizational goals and policies. Even if the issue is debatable, this Court must defer to the agency's determination. By no means can this Court say that the INS's decision on this point was arbitrary, capricious or an abuse of discretion.

The INS also determined that Mr. Avila de la Rosa was not a member of the professions within the meaning of the Act. Section 101(a)(32) of the Act defines the term "profession" to "include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools." The INS has determined that this list evinces a congressional intent to include those persons who by virtue of a specific course of study are authorized to engage in a particular professional practice. Such a specific course of study normally requires a minimum of a baccalaureate degree. Thus, a baccalaureate degree in the general field of liberal arts would not render one a member of the professions since such a degree does not prepare one to practice in a specific field. On the other hand, nurses are considered members of the professions, even though not listed in § 101(a)(32), since they engage in a specific field of study that qualifies them to practice in a distinct area. *See Navarro v. Dist. Director of the U.S. Immigration and Naturalization Serv.*, 574 F.2d 379 (7th Cir.1978), *cert. denied*, 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978).

■ Plaintiffs contend that Mr. Avila de la Rosa is a member of the profession of business administration and submit a Report of Evaluation of Educational Credentials issued by International Consultants of Delaware, Inc. to support their contention. International Consultants of Delaware, Inc. opines that Mr. Avila de la Rosa "has attained a level of knowledge and performance ability in his field of marketing which would place him on a plane with a person who has completed the requirements for a major in business administration with a specialization in marketing for a United States bachelor's de-

gree." However, this report does not bind the INS; the INS is entitled to undertake its own evaluation of Mr. Avila de la Rosa's education and experience.

The report by International Consultants of Delaware, Inc. indicates that Mr. Avila de la Rosa completed the equivalent of 21 credits at a United States institution of higher education. This course work was in the area of mechanical and electrical engineering. Although Mr. Avila de la Rosa has attended various training seminars in the area of marketing and sales, and has extensive practical experience in this area, the record indicates that he has not undertaken a specific course of study in business administration, sales or marketing at an institution of higher education. In its December 18, 1990, decision, the INS states that experience which is substituted for education must include the theoretical and practical application of specialized knowledge required at the professional level of the occupation and that not any on-the-job experience related to a professional activity may be substituted for academic education.

The agency's construction of the statute is reasonable given the nature of the professions listed in § 101(a)(32). All these professions require a specialized course of study that prepares one to exercise a particular profession. The record does not indicate that Mr. Avila de la Rosa has engaged in a specialized course of study that has prepared him to practice in the area of business administration. Although he completed some college course work, this course work was not in the area of business administration. As to the INS's determination that Mr. Avila de la Rosa does not have the requisite education to be considered a member of the professions, we can only reiterate to the plaintiffs once again that the Court may not substitute its judgment for that of the INS. Proving that the INS's determination was arbitrary, capricious or an abuse of discretion is a fairly difficult standard to meet and plaintiffs have failed to carry their burden.

C. Equitable Estoppel

■ Plaintiffs claim that even if the Government did not arbitrarily and capriciously deny his third preference petition, it should

nonetheless be estopped from arguing that he is not a manager or executive for purposes of a blanket labor certificate after having determined that he was a manager or executive for purposes of an L–1 visa. However, plaintiffs' counsel makes no serious effort to discuss the case law of the First Circuit with regard to equitable estoppel as applied to the Government generally or with respect to immigration matters. Plaintiffs' counsel even goes so far as to cite *United States Immigration and Naturalization Serv. v. Hibi*, 475 F.2d 7 (9th Cir.1973), on page nine of the motion for judgment (docket No. 25)—a case in which the Court of Appeals held that the Government was equitably estopped from denying plaintiff the benefits of a law facilitating naturalization for certain alien servicemen—without indicating that this decision was overruled by the United States Supreme Court on appeal. *See United States Immigration and Naturalization Serv. v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) (per curiam). Plaintiffs' counsel is reminded of his ethical duty to inform this tribunal of all pertinent binding case law, both that favorable and unfavorable to his clients' case. *See* A.B.A. Model Rules of Professional Conduct, Rules 3.1 and 3.3 (1994 ed.). Applying dispositive case law, plaintiffs cannot prevail on a theory of equitable estoppel.

■ Early case law held that private litigants could not invoke the doctrine of equitable estoppel against the Government. *See Utah Power & Light Co. v. United States*, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917). The rationale behind this rule is that "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). In *Utah Power & Light Co.*, the U.S. Supreme Court held that the U.S. Government could not be estopped from collecting compensation from electrical power plants built on public lands even if government officials acquiesced and did not object to construction of the plants until they were completed. "As a general rule, laches or

neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest." *Id.* at 409, 37 S.Ct. at 391 (citing, *inter alia, United States v. Kirkpatrick*, 9 Wheat. 720, 735, 6 L.Ed. 199, 203 (1824); *Steele v. United States*, 113 U.S. 128, 134, 5 S.Ct. 396, 398–99, 28 L.Ed. 952 (1885); *United States v. Beebe*, 127 U.S. 338, 344, 8 S.Ct. 1083, 1086–87, 32 L.Ed. 121 (1888); *United States v. Insley*, 130 U.S. 263, 265, 266, 9 S.Ct. 485, 486, 32 L.Ed. 968 (1889); *United States v. Dalles Military Rd. Co.*, 140 U.S. 599, 632, 11 S.Ct. 988, 998, 35 L.Ed. 560 (1891); *United States v. Mich.*, 190 U.S. 379, 405, 23 S.Ct. 742, 750–51, 47 L.Ed. 1103 (1903)). "And, if it be assumed that the rule is subject to exceptions, we find nothing in the cases in hand which fairly can be said to take them out of it, as heretofore understood and applied in this court." *Utah Power & Light Co.*, 243 U.S. at 409, 37 S.Ct. at 391.

Dicta in more recent cases also suggest that there may be exceptions to the general rule that estoppel does not lie against the Government. The plaintiff in *Montana v. Kennedy*, 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961), was born in Italy in 1906 of a native-born United States mother and an Italian father. He returned to the United States with his mother shortly after his birth, where he lived until the U.S. Government sought to deport him. Mr. Montana brought a declaratory judgment action to determine his citizenship. Besides statutory arguments to support his claim, Mr. Montana alleged that he was deprived of U.S. citizenship because a U.S. consular officer in Italy erroneously advised his mother that she could not travel to the United States while pregnant. The Supreme Court held that the consular officer's statement to plaintiff's mother that she could not travel in her condition fell short of misconduct such as might estop the Government from relying on plaintiff's foreign birth. In upholding the deportation of a fifty-five year old man that had lived nearly his entire life in the United States, the U.S. Supreme Court stated it need not stop to inquire whether "there may be circumstances in which the United States is estopped to

deny citizenship because of the conduct of its officials." *Id.* at 315, 9 S.Ct. at 535.

In *Hibi,* the plaintiff sought to claim the benefits of the Nationality Act of 1940, which provided for the naturalization of noncitizens who served honorably in the United States Armed Forces during World War II, more than 17 years after the Act's application deadline. *Hibi,* 414 U.S. at 7, 94 S.Ct. at 21. Mr. Hibi claimed that the United States Government was equitably estopped from relying on the statutory deadline because it had failed to publicize the right to apply for naturalization and because it failed to provide a representative in the Philippines to accept petitions for naturalization under the Act during the entire time he and others like him were eligible to apply. *Id.* at 7–8, 94 S.Ct. at 21. Quoting the language from *Utah Power & Light Co.* cited above, the Supreme Court stated that "[w]hile the issue of whether 'affirmative misconduct' on the part of the Government might estop it from denying citizenship was left open in *Montana v. Kennedy* (citation omitted), no conduct of the sort there adverted to was involved here." *Hibi,* 414 U.S. at 8, 94 S.Ct. at 21. *See also Immigration and Naturalization Serv. v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (unexplained 18–month delay in acting on plaintiff's visa application, during which time his marriage broke up, is not conduct giving rise to a claim of equitable estoppel); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), (Government not estopped from refusing to pay retroactive Social Security benefits because plaintiff did not apply in writing, even though failure was due to official's assurances that she did not qualify and even though official violated handbook in failing to advise plaintiff of benefits of filing written application), *reh'g denied,* 451 U.S. 1032, 101 S.Ct. 3023, 69 L.Ed.2d 401 (1981); *Phelps v. Fed. Emergency Management Agency,* 785 F.2d 13 (1st Cir.1986) (Government not estopped from refusing to pay insurance claim where government agent erroneously told plaintiffs that written claim was not required to recover for loss of home destroyed by flood); *Lasky v. United States,* 388 F.Supp. 1036 (D.P.R.1975) (Government not estopped from asserting title to land after plaintiff purchased land based on assurances that Navy had no legal interest in land); *United States v. Páez,* 866 F.Supp. 62 (D.P.R.1994) (Government not estopped from prosecuting plaintiff for illegal reentry, subject to a maximum sentence of 15 years, even though plaintiff was advised upon deportation that maximum penalty for reentry was two years); *contra, Sun Il Yoo v. Immigration and Naturalization Serv.,* 534 F.2d 1325 (9th Cir.1976) (Government estopped from denying plaintiff benefit of blanket labor certification where INS gave no explanation for one year delay and blanket certification provisions expired during that time).

The United States Supreme Court has thus far declined to adopt a blanket rule that equitable estoppel may not in any circumstances run against the Government. *See, e.g., Heckler,* 467 U.S. at 60, 104 S.Ct. at 2224. The Supreme Court noted in *Office of Personnel Management v. Richmond,* 496 U.S. 414, 422, 110 S.Ct. 2465, 2470, 110 L.Ed.2d 387 (1990), that "courts of appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed." The First Circuit took up the issue of equitable estoppel against the government with respect to immigration matters in *Akbarin v. Immigration and Naturalization Serv.,* 669 F.2d 839 (1982). It stated:

> We believe that the soundest method for analyzing a claim of estoppel against the Government in an immigration case is to make two principal inquiries: whether the Government's action was error, and, if the complaining party reacted to the error, whether the action was intended to or could reasonably have been intended to induce reliance. The second inquiry is strict: in immigration cases where the Government has been estopped, the Government misconduct must have induced the petitioner to act in a way that he would not otherwise have (citations omitted).

*Id.* at 843.

The Government erred in granting Mr. Avila de la Rosa an L–1 visa based on a

finding that he was a manager or executive. However, in this case plaintiffs contest the INS's denial of the third preference petition. The INS committed no error in the processing of that petition. Even if we assume that the error with respect to the L–1 visa was sufficient for purposes of the *Akbarin* inquiry, granting of the L–1 visa was not intended nor could it reasonably have been intended to induce reliance. The third preference petition was made under a separate provision of the Act and was in no way tied to the L–1 visa. Therefore, plaintiffs should have expected that the merits of the third preference petition would be evaluated independently of any decision made with respect to the L–1 visa. Moreover, as noted above, failure to qualify for a blanket labor certification as a manager or executive was only one of the reasons the INS denied the third preference petition. The INS also denied the petition because it did not consider Mr. Avila de la Rosa to be a member of the professions. Even if granting of the L–1 visa could reasonably have been intended to induce reliance that Mr. Avila de la Rosa would be eligible for a blanket labor certification, it could not possibly have led plaintiffs to believe that they would not have to comply with the other prerequisites for obtaining a third preference visa, *i.e.*, demonstrating that Mr. Avila de la Rosa is a member of the professions. Accordingly, plaintiffs have not been prejudiced by the INS's error in granting Mr. Avila de la Rosa an L–1 visa and then denying him the benefits of a blanket certification. Since the third preference petition would have been denied nonetheless—on the ground that Mr. Avila de la Rosa was not a member of the professions—plaintiffs could not rely to their detriment on the INS's error. Finally, we note that the lack of communication between the INS office in San Juan, Puerto Rico, and the Eastern Service Center in St. Albans, Vermont, does not impress us the sort of "affirmative misconduct" to which the Supreme Court alluded in *Montana* and *Hibi*. Although lamentable, it is not surprising that officials applying somewhat indefinite standards to the same set of facts might draw differing conclusions with respect to those facts.

## IV. *Conclusion*

The evidence suggests that the inconsistency shown by the Government was the result of a simple failure to communicate between offices, not affirmative misconduct by government officials. Nor does the Government's conduct warrant application of the doctrine of equitable estoppel. Plaintiffs have failed to show affirmative misconduct or reliance to their detriment on the Government's misrepresentation. Therefore, plaintiffs' motion for judgment is hereby **DENIED**. A final judgment dismissing the complaint shall be entered.

IT IS SO ORDERED.